363 So.2d 412 (1978)
Bernard L. SAMSON and Walter P. Loebenberg, Petitioners,
v.
BUREAU OF COMMUNITY MEDICAL FACILITIES PLANNING OF DEPARTMENT OF HEALTH & REHABILITATIVE SERVICES, State of Florida and Community Hospital of New Port Richey, Inc., Respondents.
No. EE-459.
District Court of Appeal of Florida, First District.
October 24, 1978.
John W. Hamilton of Ware & Hamilton, St. Petersburg, for petitioners.
Jack B. McPherson of Allgood, McPherson, Stewart & Bray, New Port Richey, and Douglas E. Whitney, Orlando, for respondents.
MELVIN, Judge.
The dispositive issue in this case is whether the Bureau of Community Medical Facilities Planning of Department of Health & Rehabilitative Service (the Bureau) is bound by time limitations set forth by the laws of the United States and the State of Florida, and by its own regulations.
Petitioners, Samson and Loebenberg, seek timely review of the final agency action of the Bureau in denying their application for a certificate of need for the construction of a 200-bed hospital in the Bayonet Point Community, Pasco County. The respondent, Community Hospital of New Port Richey, Pasco County, opposed the issuance of a certificate of need to the petitioners and, on that basis, was allowed to intervene in this cause. For the reasons stated below, we reverse the final order of the Bureau and mandate the issuance of the certificate of need to the petitioners.
*413 The petitioners, pursuant to Sections 381.493-381.497, Florida Statutes (1975)[1] submitted their application for a certificate of need to the Bureau on November 24, 1975.[2] The petitioners' application was considered as complete by the Bureau on December 2, 1975.
The record indicates that the Trustees of the Florida West Coast Health Planning Council, Inc.,[3] met on January 20, 1976, considered the petitioners' application, and voted to approve it, thereby overruling the earlier decision of one of its sub-councils to recommend the denial of the application. On the following day, January 21, 1976, the executive director of the Florida West Coast Health Planning Council issued the conclusion and recommendation of the Council recommending that petitioners' application be approved, stating that its review was conducted in accordance with criteria and regulations adopted pursuant to Section 381.494(5), Florida Statutes (1975).
On February 19 and 20, 1976, the State Hospital Advisory Council (S.H.A.C.)[4] held a public hearing and took testimony on the petitioners' application.
At the conclusion of its meeting, S.H.A.C. voted on two motions to recommend approval of the application and one to deny: each failing by four to four tie votes. A subcommittee of two each approving and disapproving members was chosen to accompany Forehand, the manager of the Bureau, on an on-site inspection for additional fact finding. While discussing the task of the subcommittee, several members of the council evidenced concern that they secure an extension of time from the petitioners less they not return a recommendation to Forehand prior to March 1, 1976.[5] The petitioners were consulted and orally agreed to a 60-day extension. When Chamlis, a Medical Facilities Specialist with the Bureau, attempted to more specifically pinpoint the extension deadline, the following occurred:
"Mr. Chamlis: Mr. Samson, with your granting of sixty days that would be in essence the month of March and the month of April. Your sixty days, would you grant an extention [sic] to Mr. Forehand until not later than 1 May of '76 for him to render his decision?
"Mr. Samson: If Mr. Forehand wants until May he may have until 1 May."
Thereafter, in a letter dated May 11, 1976, the Chairman of the on-site inspection subcommittee informed the Chairman of S.H.A.C. that, based upon the May 3 and 4, 1976 survey, it was the subcommittee's unanimous decision that the application be denied.
In a letter dated May 18, 1976, petitioners made demand upon Forehand to issue a certificate of need for the Bureau's failure to render a timely decision by May 1, 1976.
Thereafter, in a memorandum dated May 21, 1976, Chamlis recounted to Forehand the terms of the oral extension and expressed *414 his opinion that the Bureau was obliged to issue the certificate of need for its failure to meet the May 1, 1976 extension deadline. Chamlis' memorandum continued stating that:
"HEW is extremely adamant about the time limits allowed for review and decision by the DPA and has clearly indicated that failure of the DPA to render a decision by the due date automatically means State approval regardless of the circumstances... ."
In a letter dated May 21, 1976, the Chairman of S.H.A.C. reported to Forehand that the majority of S.H.A.C. had, by letter, concurred in the subcommittee's recommended denial.
On May 24, 1976, Forehand wrote petitioners advising them of his denial of their application. Thereafter, petitioners made their timely demand for administrative review pursuant to Chapter 120, Florida Statutes.
At the administrative hearing, the Bureau stipulated that the petitioners had complied with state law and were entitled to a certificate of need as defined in Chapter 381, Florida Statutes (1975). Thus, it was stipulated that the hearing would focus on whether the petitioners had complied with Section 1122 of Social Security Act, as added by Section 221(a), Public Law 92-603, and were, therefore, deserving of a certificate.[6]
On October 12, 1976, the hearing officer entered his order finding, among others, that the Bureau had, by written stipulation and statements of counsel, admitted that it failed to grant or deny petitioners' application within the time period required by Subsection 381.494(6), Florida Statutes (1975), and Subsection 10I-1.03(a)(5), Florida Administrative Code.[7] The hearing officer further found that petitioners' sole extension was oral and effective only to May 1, 1976, but that respondent had waited until May 24, 1976, to prepare its letter denying petitioners' application, which letter was received by petitioners on May 26, 1976.
Lastly, the hearing officer concluded that the failure of the respondent to render its decision on the application within the time constraints imposed by the applicable federal rules and regulations had the effect of a determination that the proposed capital expenditure was in conformity with the pertinent standards, criteria and plans. The hearing officer, accordingly, recommended approval of the application.
Following the entry of the hearing officer's order, the Bureau and the Intervenor filed a Petition for Writ of Certiorari, which was dismissed by this Court for want of jurisdiction.[8]
On January 10, 1977, the Bureau, through its manager, Forehand, entered its final agency order rejecting certain conclusions of fact and law set forth in the hearing officer's order finding and concluding that:
"... the [petitioners'] application is not in conformity with the standards, criteria and plans of the United States Department of Health, Education and Welfare, and that the application be denied."
There exists an agreement between the Secretary of Health, Education and Welfare and the State of Florida to carry out *415 the provisions of Section 1122 of Social Security Act, as added by Section 221(a), Public Law 92-603. This agreement provides that the Bureau is the Designated Planning Agency (DPA) for the purposes of the agreement and, further, provides that, among others, 42 CFR, 100.106(a)(4), is applicable to the agreement. 42 CFR, 100.106(a)(4) provides, in part:
"4. Except as provided in paragraph (a)(3) of this section, the designated planning agency shall, prior to the date set out in the written notice of intention submitted pursuant to paragraph (a)(1) of this section as the expected date for the obligation of the proposed expenditure (but, subject to the provisions of paragraph (a)(3) of this section in no event later than 90 days after the receipt of such notice unless the person proposing the capital expenditure agrees to a longer period), provide written notification to the person proposing such capital expenditure (i) that such capital expenditure has been determined by such agency to be in conformity with the standards, criteria and plans described in § 100.104(a)(2); or (ii) that such agency has elected not to review the proposed capital expenditure (which election shall be equivalent to a determination by such agency that such expenditure is in conformity with such standards, criteria, and plans), in which event the designated planning agency shall notify the Secretary of its reasons for electing not to review the proposed capital expenditure; or (iii) that such agency after having consulted with, and taken into consideration the findings and recommendations of, the other agencies described in § 100.105 (to the extent that such proposed capital expenditure is within the respective fields of responsibility of such other agencies), has determined that the proposed capital expenditure would not be in conformity with the standards, criteria, or plans described in § 100.104(a)(2). The failure of the designated planning agency to provide any such notification within the time limitations set forth above shall have the effect of a determination described in paragraph (a)(4)(i) of this section...."[9]
Thus, by federal regulation and by the terms of the agreement that it entered into, the Bureau was bound in such situations to either: 1) Provide written notification that the proposed capital expenditure was in conformity with the applicable standards and criteria; 2) provide written notification that it would not review the proposed capital expenditure, which would have the effect of a favorable review; or 3) provide written notice that the proposed capital expenditure did not conform to the applicable standards and criteria.
Viewing the record in a manner most favorable to the Bureau and assuming without deciding that the petitioners' verbal extension to May 1, 1976, was valid, it is readily apparent that the Bureau failed to provide written notification of its intentions by that date, which failure has the effect of a favorable determination.
We hold that, pursuant to Section 1122 of Social Security Act, as added by Section 221(a), Public Law 92-603, Chapter 381.494 (6)(c), Florida Statutes (1975),[10] and Rule 10I-1.03(a)(5), F.A.C., the Bureau's failure to comply with the time limitations set forth above is tantamount to its approval of the petitioners' application.
Section 120.57(1)(b)(9), Florida Statutes (1975), provides that the agency in its final order may reject or modify the conclusions of law and interpretations of administrative rules in the recommended order, but may not reject or modify the findings of fact unless the agency first determines from review of the complete record that the findings of fact were not based upon competent substantial evidence or that the proceedings *416 on which the findings were based did not comply with essential requirements of law.
Upon our review of the entire record in this case, we hold that the Bureau erred in modifying the recommended order of the hearing officer. While the Bureau rejected and modified the hearing officer's recommended order with substituted findings, we are of the conclusion that the factual issues surrounding the order and the modified order were susceptible of ordinary methods of proof not of the type in which the Bureau may rightfully claim special insight, and that the record supports the findings of the hearing officer. McDonald v. Dept. of Banking and Finance, 346 So.2d 569 at 579 (Fla. 1st DCA 1977).
The Order appealed from is reversed with directions that the hearing officer's recommended final order be entered in lieu thereof.
SMITH, Acting Chief Judge, and ERVIN, J., concur.
NOTES
[1] Among others, the legislative intent of these sections is to define service needs in specific geographic areas and assist health-care facilities in those areas to develop programs of service that will assure the best possible service to the community, while giving every consideration to the elimination of unnecessary duplication of health services and the provision of health services not currently available or insufficiently provided within the community. Section 381.493(2), Florida Statutes (1975).
[2] Pursuant to Section 381.495, Florida Statutes (1975), the Division of Health, Department of Health and Rehabilitative Services, is proscribed from issuing a license to a health-care facility which has failed to receive a certificate of need.
[3] The Council is the applicable "Health systems agency" for the area including Pasco County, as defined in Section 381.493(3)(h), Florida Statutes (1975).
[4] It appears that this Council is an agency, such as are described in Section 381.493(3)(k) and 381.494(6)(b), Florida Statutes (1975), with which the Bureau may consult in matters of policy, affecting the administration of Sections 381.493-381.497, and in promulgating rules, regulations and minimum standards for the issuance of certificates of need.
[5] March 1, 1976, was the 90-day deadline imposed by Section 381.494(6)(c), Florida Statutes (1975), from the date the Bureau accepted petitioners' application to be complete on December 2, 1975.
[6] The intervenors declined to so stipulate but were allowed to intervene only on the condition that it be bound by the stipulation.
[7] The Bureau, apparently tracking the time limitation imposed by the Federal Regulation [42 CFR (Code of Federal Regulations) 100.106(a)(4)] promulgated Rule 10I-1.03(a)(5), F.A.C., which purported to bind the Bureau thusly:

"5. Normally, the review period allowed from the time the DPA declares an application complete until a decision must be rendered is ninety (90) days. * * * [T]he DPA may extend the review period for a specific time, but only with written consent of the provider. The failure of the DPA to complete the review within these time limitations will be constured [sic] as approval of the proposed capital expenditure."
The Bureau subsequently repealed this rule, effective January 1, 1977. Rule 10I-1.03.
[8] Bureau of Community Med. Fac., Etc. v. Samson, 341 So.2d 1071 (Fla.App. 1977), wherein this Court held that the hearing officer designated in the matter was not an "agency" for purposes of rendering final agency action and, thus, his order was not subject to judicial review.
[9] The Agreement which was signed by Forehand on behalf of the State contains the identical language.
[10] Effective July 1, 1977, the Legislature amended this section to provide that:

"If the department fails to render a determination within 90 days, or within an otherwise extended period, from the day the application is declared to be complete, it shall be deemed that the application for a certificate of need is denied."