419 So.2d 705 (1982)
WESTCHESTER GENERAL HOSPITAL, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. AD-72.
District Court of Appeal of Florida, First District.
September 8, 1982.
*706 Paul Watson Lambert, of Slepin, Slepin, Lambert & Waas, Tallahassee, for appellant.
Donna H. Stinson, Gen. Counsel, Dept. of Health and Rehabilitative Services, for appellee.
SHIVERS, Judge.
Appellant Westchester General Hospital (Westchester) appeals from final order of Department of Health and Rehabilitative Services (HRS) finding that Westchester forfeited its grandfather exemption from having to obtain a certificate of need to construct a replacement hospital. The Hospital asserts seven points on appeal. We reverse on the basis of the first three points but conclude HRS was correct on the points Westchester raised on its remaining points on appeal.
Appellant is a 100-bed osteopathic hospital in Miami which planned to build a 212-bed replacement hospital at a site across the street. Westchester began preliminary steps toward construction in 1972.
Also in 1972 the Legislature enacted the Health Facilities Planning Act (Sections 381.493-.497, Fla. Stat. (Supp. 1972)) requiring proposed replacement hospitals to first obtain an HRS certificate of need. Section 381.497 specifically exempted (grandfathered) projects where land had been acquired and preliminary construction plans were filed prior to July 1, 1973.
Although the record is not clear whether Westchester met the exemption requirement, it is clear HRS treated Westchester as a grandfathered project on numerous occasions between 1974 and 1978. HRS now concedes that Westchester was grandfathered prior to July 1, 1979.
In 1978, by s. 3, Chapter 78-194, the Legislature repealed the grandfather exemption effective July 1, 1979. The Legislature directed HRS to provide notice to grandfathered hospitals by July 15, 1978, and stated that if HRS had previously provided written notification to projects that were exempt, such evidence would be considered "as valid evidence of inapplicability" of the Act. However, HRS failed to give notice to Westchester that it would be treated as an exempt facility until October 28, 1978. In its notice HRS advised Westchester that as of July 1, 1979, its project must be under then undefined "physical and continuous construction" in order to preserve its exemption. (The "physical and continuous construction" requirement does not appear in the statute but is an HRS *707 interpretation.)[1] HRS did not define the term "construction" when it provided statutory notice to the grandfathered projects.[2]
Between 1972 and 1979, on the basis of its grandfathered status, Westchester acquired land, incurred expenses, entered contracts, and made commitments in connection with constructing its replacement hospital. In November 1979, Westchester CPAs reported that $2,810,000 had been expended in preparation for and construction of the new hospital. During 1979 Westchester experienced permitting difficulties both from Dade County authorities and HRS. In April 1979, Westchester submitted final construction plans to HRS. Although HRS issued a "foundation only" building permit on June 25, 1979, the final HRS approval of construction plans did not come until September 18, 1979, preventing commencement of foundation work until after the latter time. Westchester began site preparation on June 29, 1979.
In December 1979, after discussions with Westchester, HRS issued an administrative complaint asserting that Westchester had forfeited its exemption by failing to be under physical and continuous construction by July 1, 1979. At that time Westchester's construction had not gone beyond site preparation. The complaint was treated as a license revocation proceeding under Section 120.60(6), Fla. Stat. (1979). After a hearing, the hearing officer found that although Westchester had failed to meet the requirements for preserving its exemption, HRS was equitably estopped from revoking Westchester's exemption and that Westchester should be given six months to comply with the requirements for preserving the exemption. HRS then entered the final order, ruling that Westchester had forfeited its exemption from having to obtain a certificate of need.
The first point for determination is whether HRS erred in modifying the findings of fact in the hearing officer's recommended order. HRS maintains that modification of the hearing officer's findings of fact is within the discretion of the agency, that deference to agency discretion must exist so that the Administrative Procedure Act does not compromise an agency's ultimate authority over matters within its regulatory power. The issue on this first point is governed by two statutes and the case law which interprets them. Section 120.57(1)(b)9, Fla. Stat. (1979) provides that an agency (such as HRS) may not reject or modify the findings of fact of the hearing officer unless the agency first determines from a review of the complete record, and states with particularity, that the hearing officer's findings of fact are not based on competent, substantial evidence or that the proceedings on which the findings were based did not comply with essential requirements of law. Section 120.68(10), Fla. Stat. (1979) provides that a reviewing court shall not substitute its judgment for that of the agency as to the weight of evidence on a disputed finding of fact unless the fact is not supported by competent, substantial evidence. The seminal case of McDonald v. *708 Department of Banking and Finance, 346 So.2d 569 (Fla. 1st DCA 1977), explains the correct interpretation of these statutes. Where the question is the weight or credibility of testimony by witnesses, or when the factual issues are otherwise susceptible of ordinary methods of proof, then the hearing officer's findings of fact must prevail if supported by competent, substantial evidence. If, on the other hand, the ultimate facts are opinions infused with policy insights for which the agency has special responsibility, then the agency should prevail if its findings are supported by competent, substantial evidence. Id. at 579.
The case sub judice is almost directly on point with the case of Samson v. Bureau of Community Medical Facilities Planning of Department of Health & Rehabilitative Services, 363 So.2d 412 (Fla. 1st DCA 1978). In Samson, HRS denied a certificate of need after rejecting a hearing officer's findings of fact and conclusions of law. This court determined that the factual issues involved in Samson were susceptible of ordinary methods of proof and, therefore, reversed with directions that the hearing officer's recommended order be entered in lieu of HRS's order. A review of the record sub judice reveals that although HRS's findings are based on competent, substantial evidence, so are those of the hearing officer. Furthermore, the factual issues involved are susceptible of ordinary methods of proof, e.g., the cause of delays in Westchester's construction project and whether Westchester was reasonably diligent in its construction efforts.
The second and third points for determination are (2) whether HRS erred in rejecting the conclusions of law in the hearing officer's report; and (3) whether HRS erred in reversing the hearing officer's recommended penalty and substituting the penalty of forfeiture. HRS argues that Section 120.57(1)(b)9 gives the agency unqualified power to reject or modify the hearing officer's conclusions. HRS further contends that the purpose of the legislative repeal of the grandfather exemption was to ensure that a project would either be built or not, so that accurate health planning could be achieved. It points out that Westchester was not held to the strict letter of the rule, that though HRS did not give final approval until September 1979, Westchester did not begin construction then. The HRS position is flawed by its ad hoc modification of the facts. The facts as found by the hearing officer will not support the HRS conclusions. Further, HRS was under an affirmative statutory duty to provide notice to Westchester by July 15, 1978, and failed in that duty. When HRS did provide notice on October 28, 1978, it did not advise Westchester of its ultimate position of requiring construction "beyond site preparation." Westchester relied to its detriment on HRS's October 28, 1978, position and, we conclude, HRS is equitably estopped from applying its rules against Westchester to revoke or forfeit the exemption. See, State Department of Revenue v. Anderson, 403 So.2d 397 (Fla. 1981).
We conclude that the final order of HRS should be reversed and the hearing officer's recommended order be entered in lieu of the HRS order, except for remand to determine a reasonable time for compliance, not less than six months or greater than one year.
We affirm the remaining points on appeal. On the fourth point, we conclude HRS did not improperly rule upon Westchester's exceptions to the recommended order. HRS dealt explicitly with Westchester's exceptions. On the fifth point, HRS did not err in modifying the recommended order when HRS did not file exceptions to it. Agency power to modify and reject flows from the statute and is not dependent on the filing of exceptions.
On the sixth point, it was not required that the Secretary of HRS and the Administrator of the Office of Community Medical Facilities personally sign the administrative complaint. Those who signed had the authority to do so.
On the seventh and last point, assuming, arguendo, that license revocation procedure Section 120.60(6), Fla. Stat. (1979) applies, *709 there is evidence to support the hearing officer's conclusion that Section 120.60(6) was followed.
REVERSED and REMANDED.
BOOTH and LARRY G. SMITH, JJ., concur.
NOTES
[1] On June 5, 1979, HRS adopted formal rules implementing s. 3, Chapter 78-194. These rules included the physical and continuous construction requirement for continued exemption but the rules, for the first time, defined "construction" as meaning construction "beyond site preparation." Rules 10-502(21) and 10-505(2), Florida Administrative Code. The rules were subsequently declared by the hearing officer to be invalid exercises of legislative power and we affirmed. Westchester General Hospital and Sylvia Urlich v. State of Florida, Department of Health & Rehabilitative Services, 417 So.2d 261 (Fla. 1st DCA 1982). However, since the HRS position at the 120.56 hearing was also based on incipient non-rule policy it was not mooted by the declaration of invalidity.
[2] The hearing officer found that by defining "construction" to mean commencement of and continuous activities "beyond site preparation," HRS promulgated a different and more restrictive definition than the one generally utilized on the construction industry. As used by professionals in that industry, "construction" may commence prior to site preparation; indicators of commencement of construction include the execution of a construction contract with the general contractor, the obtaining of a building or foundation permit, the ordering of building materials, or the signing of contracts with subcontractors. Any of these events may occur before clearing and preparing the site, the first on-site indicator of construction.