495 So.2d 790 (1986)
Jan M. TUVESON, Appellant,
v.
FLORIDA GOVERNOR's COUNCIL ON INDIAN AFFAIRS, INC., Appellee.
No. BJ-282.
District Court of Appeal of Florida, First District.
September 18, 1986.
Rehearing Denied October 29, 1986.
*791 Sherry A. Spiers of Douglass, Cooper & Coppins, Tallahassee, for appellant.
Arthur R. Wiedinger, Jr., Asst. Gen. Counsel, Office of Governor, Tallahassee, for appellee.
MILLS, Judge.
This is an appeal from a final order by the Florida Governor's Council on Indian Affairs (FGCIA) which found Tuveson had not been discriminated against on the basis of her race. Tuveson asserts the following errors were committed in the agency's order: (1) the FGCIA violated Section 120.57(1)(b)9, Florida Statutes (1983), by rejecting the hearing officer's findings of facts and by failing to state with particularity the evidence on which it relied to reject those findings; (2) the FGCIA misinterpreted the law as it relates to its Indian Preference Policy; (3) the FGCIA incorrectly interpreted Section 112.041, Florida Statutes (1978 Supp.); (4) the FGCIA erroneously concluded that it was immune from suit by Tuveson; (5) the FGCIA erroneously concluded that Tuveson had not established a prima facie case of race discrimination; *792 and (6) the FGCIA erred in denying Tuveson reinstatement and back pay as recommended by the hearing officer. We agree with each of these contentions and reverse.
The FGCIA is a state agency designed to advise the Governor on the needs of the Indians of the State and to represent Florida's Indians before the legislature and other state agencies. It operates at the direction of a 15-member board of directors. The co-chairmen of the Board are representatives of Florida's two federally recognized Indian tribes, the Miccosukee and the Seminoles.
Jan Tuveson began her employment with the FGCIA in February 1974. At that time, the agency was just beginning its operation and she was hired as a secretary/staff assistant. By the end of May 1975, both acting directors resigned and Tuveson assumed the task of running the Council office.
In September 1975, Tuveson was offered and accepted the position of Miccosukee representative and thus became one of the two co-directors. Joe Billie was selected by the Seminole Tribe. However, Joe Billie chose to spend very little time at the Council office and left the day-to-day operations to Tuveson. In March 1977, Tuveson hired Joe A. Quetone, a Kiowa Indian, to be her administrative assistant. In that same year, some questionable travel and per diem costs and double-cashing of payroll checks by Joe Billie precipitated his resignation. The Seminoles did not appoint anyone to replace him, and so Tuveson continued running the Council office alone.
In December 1977, the Board voted to change its staff structure, the co-director positions were abolished, and a new structure consisting of an executive and deputy director established. In addition, the Board amended its policies to include in its job descriptions a statement that "Preferential hiring consideration will be given to Native American Indian applicants and/or those with experience in Native American programs." Following these changes, Tuveson continued on with the FGCIA as its acting executive director.
In June of 1978, a Board meeting was held at which Joe Dan Osceola voiced his opinion that Indian preference was a law, that one of these days white people will have to move into other jobs so Indians can run Indian programs, and that he was sorry Jan was not an Indian because she had done a good job. Board Member Jo Ann Jones also expressed the view that Indian programs should be run solely by Indians.
On 25 August 1978, the Board of Directors held a special meeting to select their executive director. The choice was between Tuveson or her assistant, Joe Quetone. There was virtually no discussion of the relative merits of the two applicants and several requests to postpone the vote until more board members could express their views. However, the vote proceeded. Of the eight members present, six voted in favor of Quetone and two abstained.
At the meeting, testimony reveals that Seminole Chairman Howard Tommie threatened to pull the Seminoles out of the Council altogether if Tuveson was selected as executive director. In fact, this was the stated reason why Board Member Robert Travis chose to vote for Quetone, although he had expressed to the Board that he felt Tuveson was better qualified and he preferred her for the position.
Following Tuveson's termination, she filed a request for an administrative hearing. The FGCIA denied this request, contending it was not a state agency. Accordingly, Tuveson filed suit in Leon County Circuit Court and obtained a declaratory judgment that the Council is a state agency for purposes of Section 112.041, Florida Statutes. This was affirmed on appeal. Florida Governor's Council on Indian Affairs, Inc. v. Tuveson, 384 So.2d 217 (Fla. 1st DCA 1980). Tuveson's petition was then transferred to the Division of Administrative hearings, where she was granted an indefinite stay of administrative proceeding so that she could pursue a claim in the Federal court against the FGCIA.
Tuveson won a jury verdict of back pay and punitive damages in Federal court; *793 however, the judgment was reversed on appeal. The Eleventh Circuit found that the FGCIA enjoyed the State's sovereign immunity under the Eleventh Amendment of the United States Constitution and that no waiver of sovereign immunity had occurred. Tuveson v. Florida Governor's Council on Indian Affairs, 734 F.2d 730 (11th Cir.1984). Thereafter, the administrative proceeding was resumed.
In August 1985, the hearing officer issued his recommended order finding that Tuveson was the victim of race discrimination by the Council and recommending that she be reinstated and granted back pay. On 24 October 1985, the Board of Directors met and a final order was issued rejecting this finding, among others. This timely appeal followed.
Section 120.57(1)(b)9, Florida Statutes (1983), provides that an agency may reject the hearing officer's conclusions of law. However, it may not reject or modify findings of fact unless it first determines from a review of the complete record, and states with particularity, that the hearing officer's findings of fact are not supported by competent substantial evidence or that the proceedings on which the findings were based did not comply with the essential requirements of law. Section 120.68(10), Florida Statutes (1983), provides that a reviewing court shall not substitute its judgment for that of the agency as to the weight of evidence on any disputed finding of fact unless the agency's finding is not supported by competent substantial evidence.
These statutes have been interpreted to mean that where the question is the weight or credibility of testimony of witnesses, or where the factual issues are otherwise susceptible of ordinary methods of proof, the hearing officer's findings of fact must prevail if they are supported by competent substantial evidence. If, however, the ultimate facts are matters of opinion which are infused with policy considerations for which the agency has special responsibility, the agency will prevail if its findings of fact are based upon competent substantial evidence. Westchester General Hospital v. Department of Health & Rehabilitative Services, 419 So.2d 705 (Fla. 1st DCA 1982).
In the present case, each of the three issues for which the FGCIA substituted its findings for that of the hearing officer, were factual and susceptible to ordinary methods of proof. See, School Board of Leon County v. Hargis, 400 So.2d 103 (Fla. 1st DCA 1981) (discrimination is based upon the motives of the decision-maker; and motive, credibility and purpose are all questions of fact to be determined by the hearing officer). Therefore, the inquiry on appeal must be whether there was no competent, substantial evidence in the record from which the hearing officer's findings could reasonably have been inferred. Heitz v. Department of Business Regulation, Div. of Alcoholic Beverages & Tobacco, 475 So.2d 1277 (Fla. 1st DCA 1985).
We find there was competent substantial evidence to support the hearing officer's finding that the agency fired Tuveson on the basis of race, that Tuveson was not offered any other employment with the agency, and that Tuveson was the best qualified applicant. Accordingly, the FGCIA committed reversible error by rejecting these factual findings. Further error was committed when the FGCIA failed to state with particularity the reasons why these findings were rejected. Harvey v. Nuzum, 345 So.2d 1106 (Fla. 1st DCA 1977).
Turning to the next issue on appeal, the Council reached three conclusions regarding its Indian preference policy in the final order. First, there is no "authority whatsoever upon which to base the assumption that the Council's Indian preference policy is illegal." Second, the goals of Florida's affirmative action statute, Section 110.112, justify such a policy. Third, under Federal law its Indian preference policy would be legal and, consequently, the laws of Florida should find no fault with it.
"Indian preference" is a federal law concept which essentially means that preferential *794 consideration in employment decisions may be given to native American Indians in the Bureau of Indian Affairs, the Indian Health Service, and in business enterprises on or near a reservation. Morton v. Mancari, 417 U.S. 535, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974).
Race discrimination is illegal in Florida according to Section 112.041, Florida Statutes (1978 Supp.), and its successor Section 110.105, Chapter 760, Florida Statutes, and Article I, Section 2, of the Florida Constitution. Although Section 110.112, Florida Statutes (1983), directs state agencies to develop and implement affirmative action programs, this statute was not enacted until 1979; two years after the Council adopted its Indian preference policy and one year after Tuveson was fired. Moreover, the stated purpose of the statute is to "allow full utilization of women and minorities." Thus, Tuveson as a woman is equally protected under the affirmative action law as an Indian or other minority would be.
The FGCIA's conclusion that Indian preference is legal under Federal law is irrelevant; what is legal under Federal law is not the same as what is legal under Florida law. Moreover, the FGCIA is not an agency that Congress has afforded with a preference policy, as it is not a part of the Federal Bureau of Indian Affairs or the Indian Health Service. It is also not a business or enterprise located on or near a reservation since the Council's offices are in Tallahassee.
Section 112.041, Florida statutes (1978 Supp.), under which this action was initiated, is entitled "No discrimination in state employment." In its final order, the FGCIA concludes that this statute is merely a policy statement and does not prohibit any conduct. We fail to see any logic in this conclusion. Why would the legislature provide that certain conduct is against public policy, refer to such conduct as an "unlawful employment practice," and provide for invoking the administrative and judicial machinery of the State if the conduct described is not, in fact, intended to be prohibited.
The final order also contains the conclusion of law that the Council was found to be immune from suit by Tuveson in Tuveson v. Florida Governor's Council on Indian Affairs, Inc., 734 F.2d 730 (11th Cir.1984). This conclusion is wrong. The Eleventh Circuit looked to the Eleventh Amendment of the United States Constitution, which grants immunity to the states in federal court, to hold that suit was barred against the FGCIA as a state agency in that forum. In other words, the federal court dismissed the case due to lack of jurisdiction and never reached the merits. State Road Department v. Brill, 171 So.2d 229 (Fla. 1st DCA 1964).
Looking to the fifth issue on appeal, the final order states that Tuveson failed to establish her prima facie case of discrimination by failing to show she was a member of a protected class and that she was better qualified for the position than Quetone. This is incorrect. As a state employee, Tuveson is a member of a protected class and the hearing officer found she was the better qualified applicant.
More importantly, as the United States Supreme Court stated in U.S. Postal Service Board of Governors v. Aikens, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983):
Where the defendant has done everything that would be required of him if the plaintiff had properly made out a prima facie case, whether the plaintiff really did so is no longer relevant. The district court has before it all the evidence it needs to decide whether "the defendant intentionally discriminated against the plaintiff."
Having concluded that the FGCIA's final order must be reversed, the next inquiry becomes what relief is Tuveson entitled to. According to Section 120.68(13)(a), Florida Statutes (1983), this Court may order "whatever relief it finds appropriate irrespective of the original form of the petition." The statute further provides that the court may set aside agency action, *795 decide the rights and privileges at issue, and order such ancillary relief as the court finds necessary to redress the effects of official action wrongfully taken or withheld.
Tuveson seeks reinstatement and back pay. The FGCIA has not challenged the sufficiency of Tuveson's evidence of lost wages, nor has it challenged or rejected the hearing officer's determination of the amount of back pay. Consequently, we find the hearing officer's calculation that Tuveson has lost annual salary of $148,854.51 from 31 August 1978 to 31 August 1985, and that back pay accrues thereafter at an annual rate of $21,264.93, must stand.
Accordingly, we reverse and remand with directions that Tuveson be reinstated and granted back wages in accordance with this opinion.
Reversed.
WENTWORTH and NIMMONS, JJ., concur.