518 So.2d 1342 (1987)
AMERICAN INSURANCE ASSOCIATION, et al., Appellants,
v.
DEPARTMENT OF INSURANCE, Appellee.
No. BS-447.
District Court of Appeal of Florida, First District.
December 29, 1987.
Rehearing Denied February 5, 1988.
*1343 Frederick B. Karl and Thomas J. Maida of Karl, McConnaughhay, Roland & Maida, Tallahassee, and Vincent J. Rio, III of Taylor, Day & Rio, Jacksonville, for appellants.
John E. Hale, Div. of Legal Services, Dept. of Insurance, Tallahassee, for appellee.
THOMPSON, Judge.
This is an appeal from a final order of the Department of Insurance (Department) creating, pursuant to § 627.351(5), Fla. Stat. (Supp. 1986), the Florida Property and Casualty Joint Underwriting Association (FPCJUA). We reverse.
In response to an alleged insurance crisis, the Florida Legislature enacted Chapter 86-160, Laws of Florida (otherwise known as the Tort Reform and Insurance Act of 1986) in an attempt to deal comprehensively with the perceived problem. Among other things, Chapter 86-160 imposed an insurance rate freeze and rate roll-back. As a result of their dissatisfaction with these and certain other provisions of the act, a number of insurance companies ceased writing property and casualty insurance in Florida, which action resulted in at least a temporary hiatus in the availability of property and casualty insurance. Section 13 of the act, now codified as § 627.351(5), Fla. Stat. (Supp. 1986), authorized the Department to establish a joint underwriting association of property and casualty insurers upon a finding of need therefor:
(5) PROPERTY AND CASUALTY INSURANCE RISK APPORTIONMENT. If the department determines, after consultation with the insurers authorized in this state to write property insurance ... or casualty insurance ..., that any class, line, or type of coverage of property or casualty insurance is not available at adequate levels from insurers authorized to transact and actually writing that kind and class of insurance in this state or in a particular geographic area, the department shall implement by order a joint underwriting plan to equitably apportion among such insurers the underwriting of property insurance or casualty insurance ..., to persons with risks eligible under subparagraph (a)1 and who are in good faith entitled to, but are unable to, obtain such property or casualty insurance coverage, including excess coverage, through the voluntary market. For purposes of this subsection, an adequate level of coverage means that coverage which is required by state law or by responsible or prudent business practices. The Joint Underwriting Association shall not be required to provide coverage for any type of risk for which there are no insurers providing similar coverage in this state... .
*1344 The pertinent portions of subsection (a)1. of § 627.351(5) which define risks eligible for placement with the FPCJUA provide:
(a) The plan shall provide:
1. A means of establishing eligibility of a risk for obtaining insurance through the plan which provides that:
a. A risk shall be eligible for such property insurance or casualty insurance as is required by Florida law if the insurance is unavailable in the voluntary market, including the market assistance program and the surplus lines market.
b. A commercial risk not eligible under sub-sub paragraph a. shall be eligible for property or casualty insurance if:
(I) The insurance is unavailable in the voluntary market, including the market assistance plan and the surplus lines market;
(II) Failure to secure the insurance would substantially impair the ability of the entity to conduct its affairs; and
(III) The risk is not determined by the Risk Underwriting Committee to be uninsurable.
Shortly after passage of the act, the Department conducted a market survey of insurers writing property and casualty insurance in Florida, and consulted with the Florida Market Assistance Plan (MAP), a statutorily created program funded and administered by the insurance industry for the purpose of assisting insurance agents and the public in placing property and casualty insurance risks. The Department also conducted a public meeting to receive public comment concerning the availability of property and casualty insurance. Based upon the information thus obtained and on other data reviewed, the Department determined that there were classes, lines and types of property and casualty insurance not available statewide or in particular geographic areas at adequate levels from insurers authorized to transact business in this state for persons who in good faith were entitled to such coverage. Accordingly, the Department issued an order dated October 3, 1986 directing the creation of the FPCJUA. This order included a general finding that there were classes, lines or types of property and casualty insurance coverage not available. However, the finding did not specify any class, line or type of either casualty or property insurance that was unavailable and did not state whether such insurance was unavailable statewide or only in a particular geographic area. The order provided that any substantially affected party desiring to contest the order could do so by filing a petition with the Department for a proceeding pursuant to § 120.57, Fla. Stat.
Several insurance associations and insurers did request a formal hearing, which the Department initially scheduled for November 17, 1986, but then continued to December 3, 1986. The notice of the December 3 hearing provided, inter alia, that the issues to be determined were whether the October 3, 1986 order creating the FPCJUA was supported by substantial competent evidence and whether the conditions precedent required by § 627.351(5), Fla. Stat. had been met by the Department. The hearing was thereafter again continued to Monday, December 22, 1986. The second order continuing the hearing directed the parties to complete discovery by Thursday, December 18. Shortly after the issuance of the order continuing the final hearing to December 22, 1986 the Department sent a letter to insurance industry representatives notifying them that an organizational meeting of the FPCJUA would be held on December 23, 1986.
In November, the petitioners deposed the Department's designated representative/witness and learned that in addition to relying on the market survey, MAP statistics, and the evidence received at the public hearing the Department had conducted in August 1986, the Department intended to call certain consumer witnesses to testify about their experience in attempting to purchase property and casualty insurance. At the time the deposition of the Department representative was taken the final hearing was still scheduled for December 3, 1986, *1345 with the discovery completion date set for December 1, 1986. On this basis the representative promised petitioners that the Department's witness list would be furnished to them no later than December 1, 1986. The petitioners thereafter filed a number of motions including another motion to continue and a motion to have the case referred to the Division of Administrative Hearings (DOAH). Apparently the petitioners did not object to the fact that the order continuing the hearing to December 22, 1986 also permitted discovery to be conducted through December 18, 1986. The Department did not furnish the petitioners with its witness list, naming some 17 potential witnesses, until December 18, 1986, the date when the time for the conducting of discovery expired. The petitioners moved for another continuance on the grounds that they needed to depose or interview the listed witnesses. This motion was denied and the Department went forward with the hearing on December 22 with Bill Gunter, the Insurance Commissioner (Commissioner), acting as hearing officer.
The Department called as witnesses its previously designated representative, another Department employee who had knowledge of citizen complaints and requests for assistance, the MAP manager and seven consumer witnesses. The consumer witnesses testified generally about problems they had obtaining various types of property and casualty insurance, and although five of the consumer witnesses had obtained the insurance they needed prior to the hearing, all testified that they had had considerable difficulty obtaining coverage. On cross-examination and rebuttal of the consumer witnesses the petitioners were able to show that one of the two witnesses who had been unable to obtain insurance had a poor claims history and that the other's one man operation was simply not ratable.
The Department's representative testified concerning the results of the market survey which the Department had conducted in July and August of 1986. The other Department employee witness testified concerning the large volume of complaints and requests for assistance received by the Department between October 1985 and November 1986. He estimated that during the 13 month period preceding October 8, 1985 the Department had received only 40 such calls but that over 800 such calls had come in between October of 1985 and November of 1986. The MAP manager testified concerning the high volume of requests for MAP assistance and stated that only one-third of the businesses applying for MAP assistance were able to place their risks even with MAP's help. On cross-examination of the Department employee petitioners elicited the information that about one-half of the complaints received by the Department related to the price of insurance and not to its availability, and that a number of the callers who had problems with availability were individuals not in business who sought insurance for themselves personally. Cross-examination of the MAP manager revealed that the volume of requests for MAP assistance had dropped considerably in November and December of 1986 and that most of the risks which MAP could not place due to risk characteristics were probably uninsurable. The petitioners did not call any witnesses but did introduce evidence tending to indicate that the availability problem as to property and casualty insurance had abated somewhat since the market survey was done and would likely improve even more since several of the larger insurers which had abandoned the Florida market were planning to reenter the market on January 1, 1987. In its final order dated March 6, 1987 the Department reviewed all the evidence and found that clear and convincing evidence proved that certain types of commercial property and casualty insurance were not available at adequate levels in Florida. In this order the Department found that it had the burden of establishing by competent substantial evidence that a need for the FPCJUA existed. Nowhere in the order does there appear any express *1346 reference to the preponderance of evidence standard of proof.
Appellants contend that in entering its order establishing the FPCJUA the Department erred in the following respects: (1) it applied the wrong burden of proof, (2) it applied the wrong criteria in determining that a need existed for the creation of the FPCJUA, (3) the order on appeal is not supported by competent substantial evidence, (4) the appellants were prejudiced by the Department's failure or refusal to furnish a witness list before the time for the taking of depositions expired and for refusing to continue the hearing or exclude the testimony of the witnesses named on the list, and (5) it erred in refusing to refer this case to the Department of Administrative Hearings.
The appellants correctly contend that the Department applied the wrong burden of proof in determining whether need existed for the FPCJUA. The correct burden of proof requires that the Department establish the need for the FPCJUA by a preponderance of the evidence. In this case, however, the notice of hearing provided in part that issues to be determined were whether the October 3, 1986 order was supported by substantial competent evidence and whether the conditions precedent required by § 627.351(5) were met by the Department. Further, the final order on appeal also recites that the Department had the burden of proving need for the FPCJUA by competent substantial evidence. Whether there is competent substantial evidence to support an order is the standard of review an appellate court applies in appeals from final orders of the trial courts or final agency orders in administrative hearings. It is not the burden of proof required of an agency in administrative proceedings. An agency in an administrative proceeding is required to prove its case by a preponderance of the evidence. This standard of proof was not required in either the initial proceedings or in the § 120.57 proceedings. The competent substantial evidence test may be met and that evidence still may wholly fail to constitute a preponderance of the evidence. It was therefore error for the Department to find a need for the FPCJUA which was not based on a preponderance of the evidence.
Not only was the need for the FPCJUA determined by the wrong standard of proof; there was a total disregard by the Department for the requirement of subsection 627.351(5)(a), Fla. Stat. that risks must be insurable in order to be eligible. No inquiry was made to determine whether the parties that were unable to obtain property or casualty insurance were seeking coverage for insurable risks. On the contrary, evidence developed by cross-examination indicates that some of the witnesses' risks were uninsurable. There was also testimony that most of the individual witnesses were able to obtain insurance prior to their testifying and those unable to obtain coverage were not insurable risks. The Department therefore failed to prove a need for the FPCJUA by eligible applicants even under its own erroneous standard of proof.
The Department also erred in failing to grant a continuance or in the alternative failing to exclude the testimony of witnesses whose names it had failed or refused to timely reveal. The hearing was originally scheduled for November 17, 1986. In November the appellants took the deposition of the Department's designated representative and gave notice that one of the matters to be inquired into was the name, address and telephone number of all persons which the Department intended to call as witnesses at the hearing. At deposition the Department's representative did not or could not identify the witnesses that would testify but agreed to furnish the names as soon as possible. At that time the final hearing was scheduled for December 3, 1986, but no list of witnesses was furnished before that date and the hearing was continued until December 22, 1986. The list of 17 witnesses was not furnished until December 18, which was the last day *1347 for the taking of depositions. The appellants were therefore deprived of the opportunity to depose and determine the testimony of the witnesses and were deprived of an opportunity to prepare for the interrogation of the witnesses and to prepare rebuttal of their testimony. The Department had a duty to timely furnish the names and addresses of its witnesses and the appellants were prejudiced by its failure to do so. The Florida Rules of Civil Procedure encourage full and complete disclosure in order to eliminate surprise and facilitate determination of the true relevant facts.
The Department's contention that the error was harmless is rejected in view of the fact that some of these witnesses' testimony was summarized and relied upon in the final agency order. The record thus reflects that appellants were prejudiced by the Department's failure to timely furnish the names of these witnesses and by its refusal to either continue the hearing in order to provide the appellants with an opportunity to examine or depose the witnesses or in the alternative to exclude their testimony. Although the hearing officer has broad discretion on this matter his refusal to either continue the hearing or exclude the witnesses' testimony was an abuse of discretion in view of the clear showing of prejudice by the appellants. Binger v. King Pest Control, 401 So.2d 1310 (Fla. 1981).
Appellants further contend that they were denied their due process right to a fair hearing because the Commissioner refused to refer the case to the DOAH. The Commissioner as agency head is authorized by § 120.57(1)(a)1 to conduct formal hearings. However, there are cases such as this one when the far better procedure would be to refer the request for a § 120.57 hearing to the DOAH for assignment of a hearing officer. While we do not find that the record in this case shows any personal prejudice or bias on the part of the Commissioner, there is at least an appearance of possible bias or prejudice reflected by the facts. Prior to the formal hearing of December 22 the Commissioner had entered an order finding there was a need for the FPCJUA and directing that the FPCJUA be established. After previously reaching this decision on the need for and the establishment of the FPCJUA the Commissioner presided at a hearing requested by parties contesting the need for and the establishment of the FPCJUA. Approximately two and one-half weeks before the final hearing of December 22 the Commissioner wrote various insurance industry representatives inviting them to a meeting to be held the day after the scheduled final hearing. The letter advised that the Department was in the process of developing a plan for the FPCJUA and that insurance industry input was desired in establishing it. While these facts do not prove bias or prejudice, they clearly create an appearance of it that should have been and could have been avoided by referring the matter for hearing to the DOAH which would assign it for hearing to a qualified hearing officer who is not in any way connected with any of the prior actions or decisions of the Department.
We reverse and remand, and strongly recommend that this matter be referred to the DOAH for hearing.
ZEHMER, J., concurs.
SHIVERS, J., specially concurs with written opinion.
SHIVERS, Judge, specially concurring.
I respectfully concur in the result of reversal, remand, and reference to DOAH.