PER CURIAM.
Appellant seeks reversal of a final order of the Florida Board of Medicine (Board), suspending his license to practice medicine for a period of six months, placing him on probation for three years, and prohibiting him from performing certain medical procedures for a period of three years unless under the supervision of another board approved plastic surgeon. After consideration of the briefs and arguments of counsel, and review of the record submitted to this court,[1] we find competent, substantial evidence to support the findings and con- *154 elusions of the hearing officer adopted by the Board in its final order, and affirm.
Appellant, Dr. Robertson, is a board-certified plastic surgeon who has limited his practice, since 1955, to plastic surgery. In August 1986, Dr. Robertson performed a face lift and a chemical face peel upon a patient, Lillian Shapiro. Because of severe scarring and disfigurement suffered as a result of the chemical face peel, Shapiro lodged a complaint with the Department of Professional Regulation. Following an investigation, the Department filed a complaint charging appellant with violations of provisions of Chapter 458, Florida Statutes, Florida’s Medical Practice Act.[2] Count I charged a failure to practice medicine with that level of care, skill, and treatment recognized by a reasonably prudent similar physician as being acceptable under similar conditions and circumstances, under section 458.331(1)(t), Florida Statutes. Count II charged a failure to keep written medical reports justifying the course of treatment of the patient as required by section 458.-331(1)(m). Count III (added by later amendment to the original complaint) charged a violation in connection with altering of appellant’s medical records after the filing of the administrative complaint, alleged to violate section 458.331(1)(m). After hearing, appellant was exonerated as to Count III, and that charge was dismissed. He was found guilty as to the first two counts, the Board adopted the hearing officer’s findings and recommended penalties, and this appeal followed.
At the outset it should be noted that no contention has been made in the proceedings below, or here, that in performing the surgical face lift upon Mrs. Shapiro, Dr. Robertson failed to exercise the care, skill and competence required of him as a prudent physician under the circumstances. The sole issue, so far as the charge of malpractice is concerned, is whether appellant departed from the standards of care and skill required in performing the chemical face peel upon the patient following the face lift. We further note that although appellant’s statement of the three points on appeal is couched in the form of legal issues,[3] we find that resolution of these issues involves not so much a matter of law, as a determination of issues of fact.[4]
The initial consultation between the patient and appellant, the face lift and peel procedures which followed, and the unfortunate aftermath are described in portions of the hearing officer’s lengthy order as follows:
15. At the initial consultation, Shapiro explained her concerns to respondent and told him of her prior face lift. Respondent suggested to Shapiro that she have a full face lift, that the fat under her chin be suctioned out, that a deep peel with tape be performed around the mouth and that, after the bandages were *155 removed, a “light peel” be performed over the “rest of the face” to even out her skin tone. He pointed out that, without a full face peel, she would have a different skin tone around her mouth from the rest of her face. Shapiro agreed to these suggestions but was nonetheless “very, very apprehensive” about having all this done.
16. During the initial consultation Dr. Robertson did not check Shapiro’s heart, blood pressure or lungs since he accepted her representation that she was in good health. The evidence is conflicting as to whether any type of physical examination was performed but it is found there was none. In so finding, the undersigned has rejected respondent’s contention that his nursing aide performed a physical examination of Shapiro since respondent submitted no independent proof of this and Shapiro denied this assertion. While he did not inquire as to whether Shapiro was a smoker, Dr. Robertson pointed out he knew she was a “heavy smoker” because he had seen her smoke at his office.[3] Even so, he did not ask her to refrain from smoking during the operative period or explain the risks associated with smoking. Respondent did not ask who was Shapiro’s personal physician although most experts agreed that this item of information is necessary. Further, he did not advise her of risks associated with performing a face peel on a person with dark-pigmented skin. Finally, although such a notation was made on her records, at no time did Shapiro ever advise respondent that she was a “keloid former.”[4]
17. Shapiro returned for a second consultation with respondent on June 2, 1986. A few weeks later, she had other nonrelated surgery performed by him without complication. On Wednesday, August 20 respondent performed a full face lift procedure. There were no operative notes prepared by respondent on a contemporaneous basis that described the exact procedures performed that day. However, respondent did prepare an operative report in November or December, 1987, or some fifteen months later, for the purpose of litigation. As such, the credibility of the report is placed in issue, particularly since Dr. Robertson could not recall certain specifics about the procedures at deposition or final hearing, and the report is simply an after-the-fact reconstruction of the surgical events to counter pending litigation. With this in mind, the operative report reflects that Dr. Robertson first made routine incisions in front of the ear, covering around the ear lobe and then behind the ear. He then used a relatively new technique that is known as an imbrication, or plication, and involves a lapping over of the tissues underneath the skin. By doing so, he restricted the amount of undermining to approximately one and one-half inches from the incisions into the cheek area. The new procedure also relieved the tension on the surface skin. On the same day, Dr. Robertson performed a liposuction of the chin, an eye-lift and a brow-lift. After the face lift was completed, respondent performed a perioral peel with tape. In layman’s terms, this meant he placed tape around Shapiro’s mouth area and performed a chemical peel. Two days later, or on Friday, August 22, 1986, respondent removed the bandages on Shapiro’s face. After giving her a Demerol injection, he swabbed her entire face, except her eyelids, nose, eyebrows and mouth area, with a phenol solution of unknown concentration. A light, creamy antiseptic powder was later placed on the peeled area. Although Dr. Robertson contended he gave Shapiro only a “touch-up” on approximately ten freckles, this assertion is rejected as being inconsistent with the more convincing and persuasive evidence. It is also noted that respondent justified performing the face peel two days after the face lift on the grounds it saved the patient money and was a time-saver for both he and Shapiro.
18.On August 27, Shapiro returned to Dr. Robertson’s office to have the sutures removed. At that time, thick, dark scabs had formed over much of her face but the nurse told her this was merely a sign of a good, deep peel....
*156 Appellant’s argument on the malpractice issue is predicated almost entirely upon the assumption that only one view of the evidence is possible: That Dr. Robertson did a limited or “mini” face lift in which only a small area of skin (one inch to one-and-one-half inches from the incision) is undermined, and that he did a chemical face peel confined to the areas around the mouth, with exception of a “touch-up” of a few freckles on the skin over the undermined areas. Dr. Robertson, it may be noted, testified emphatically that this is what he did, although the entry in his medical records state that he did an “extended peel” on the patient. As noted above, the hearing officer did not accept Dr. Robertson’s version of what he did, finding instead that Robertson did a full face peel, which, according to the prevailing medical opinion and practice, should not be done sooner than two to three months following a face lift. The physicians who testified as expert witnesses in appellant’s behalf based their opinions upon the assumption that the face peel was limited as asserted by Dr. Robertson, and that no peeling of undermined skin was done other than the “touch-up” of a few freckles on the undermined area. They found, accordingly, no deviation from the standard of practice required.
Mrs. Shapiro, on the other hand, testified that two days after her face lift, Dr. Robertson applied a solution over her entire face. In addition, the physicians who testified as experts in behalf of the Board, found from their examination of Mrs. Shapiro that the appearance and location of her visible scarring, and the condition and coloration of her facial skin, were inconsistent with Dr. Robertson’s claim that he peeled only the area around the mouth, and a few freckles. One of the Board’s experts specifically testified that assuming a “mini-lift,” with limited undermining was performed, it would be unacceptable medical practice to do more than the limited peel described by Dr. Robertson two days after the face lift for the reason that in addition to loss of blood supply to the undermined areas, increasing the risk of scarring and improper healing, the skin adjacent to the undermined areas is also “compromised” by reason of the tension placed on this skin when the skin over the undermined area is pulled into position and sutured.[5]
From our review, we find no support in the record for appellant’s assertion that the hearing officer and the Board treated a “new medical methodology” (the mini face lift procedure described by Dr. Robertson) as evidence of a malpractice violation under the statute. We likewise find lacking in substance appellant’s contention that the hearing officer and the Board, in ruling on the record-keeping charge, erroneously applied a “local” (Miami standard) whereas the statute mandates compliance with a “national” standard. As to the record-keeping charge, the statute, section 458.331(l)(m), imposes the requirement of keeping written medical records “justifying the course of treatment of the patient, including, but not limited to patient histories; examination results; test results; records of drugs prescribed, dispensed or administered; and reports of consultations and hospitalizations.” In his findings, the hearing officer acknowledged that while less detailed records are considered necessary when a physician is treating a patient in a private office setting rather than in a hospital, this does not negate the need for a minimum amount of information to conform with prevailing community medical standards so that “neutral third parties can observe what transpired during the course of treatment of a patient.” It is clear from the evidence and from the hearing officer’s findings that the hearing officer applied *157 neither a local or national standard, but the Florida statutory standard in finding a violation on this charge.
Finding no reversible error, the final order appealed from is
AFFIRMED.
SMITH and MINER, JJ., and THOMPSON, FORD L. (Ret.), Associate Judge, concur.

. Although we assume the record as submitted is sufficient for review of the issues on appeal, we note that the depositions of Drs. Litton, Baker and Truppman, the transcript of proceedings before the Board, and exhibits listed in the transcript of proceedings before the hearing officer are not included in the record on appeal.

. The parties are in agreement that a violation of the charges made under these statutes must be established by clear and convincing evidence. Ferris v. Turlington, 510 So.2d 292 (Fla.1987).

. The three points as stated in appellant’s brief are:
1. Whether the conclusion or opinion of an expert witness without evidentiary foundation in the record constitutes clear and convincing evidence of violation of the Medical Practice Act.

or

Whether the opinion or assumption of an expert witness constitutes clear and convincing proof of the facts necessary to the support of that opinion.
2. Whether a medical methodology disapproved or unheard of by three out of five experts in/of that specialty constitutes clear and convincing proof of a violation of the Medical Practice Act.
3.Whether clear and convincing proof of a record-keeping violation may be predicated of a "local" standard even as the principal (malpractice) violation is predicated of a “national” standard.

.The parties are in agreement that under section 120.68(10), Florida Statutes, agency determinations may be set aside only if the court finds that the agency’s action depends upon a finding of fact not supported by competent substantial evidence in the record. American Insurance Association v. Department of Insurance, 518 So.2d 1342 (Fla. 1st DCA 1987), review denied, 528 So.2d 1181 (Fla. 1988); Tuveson v. Florida Governor's Council on Indian Affairs, Inc., 495 So.2d 790 (Fla. 1st DCA 1986), review denied, 504 So.2d 767 (Fla.1987), appeal after remand, Florida Department of Insurance, Division of Risk Management v. Tuveson, 543 So.2d 245 (Fla.1st DCA 1989).

 However, this testimony does not square with other testimony given by respondent to the effect that he did not learn Shapiro was a heavy smoker until after the procedures were performed. (footnote in the original)

 The term "keloid former” means that the patient had formed Keloid scars after previous surgery or injury, (footnote in the original)

. In addition to finding by clear and convincing evidence that appellant failed to conform with prevailing community standards by performing a face peel on undermined or compromised skin two days after a face lift, he found that appellant also violated the statute by failing to adequately advise Mrs. Shapiro regarding the risks of performing a face peel on a patient with dark-pigmented skin.