ERVIN, J.,
dissenting.
In my judgment, the administrative complaint sufficiently charged appellant with the offense for which he was disciplined, and the proof adduced in support thereof was sufficient. Among other things, Dr. Trevisani was alleged not to have kept written medical records, as required by section 458.331(l)(m), Florida Statutes, by failing to document the preoperative consultation with his patient, and failing to complete or create an operative report for the procedures. It continued that, by reason of these omissions, appellant had violated the statute “by failing to keep legible ... medical records ... that justify the course of treatment of the patient.” [1]
The administrative law judge (ALJ) found, as to the allegations that appellant had failed to keep records of the preoperative consultation and to complete or create an operative report for the procedures, that the charges were ambiguously drafted and could be interpreted in one of two ways, either appellant had prepared sufficient records, but failed to keep them because he did not retain them, and therefore could not produce them on request, or appellant had failed to prepare any medical records, and thus had none to keep. The ALJ concluded by interpreting that appellant was charged only with the latter, ie., that he failed ever to prepare the records.
As the ALJ’s explanation was essentially an interpretation of a charging document, and not a finding of fact, the Board, in my judgment, properly rejected it because it was under no obligation to defer to the ALJ’s interpretation, only to explain why its conclusion was more reasonable, which, *1110 in fact, it did. See § 120.57(1)©, Fla. Stat. It explained that nothing was ambiguous in the complaint’s language charging appellant with failing to document his notes, because appellant never produced them for review.
The Board’s interpretation of the statute and the charge implementing it is consistent with the ordinary meaning of the term “document.” The first definition of “document” in the American Heritage Dictionary, when used as a verb, means “to furnish with a document,” and the second and third definitions refer to supporting an assertion with evidence, or to supporting a statement with written references. The AMERICAN Heritage Dictionary 387 (New College ed.1981). The first definition of the term in Black’s Dictionary means “to support with records,” and the second definition, “to record; to create a written record.” Blaok’s Law Dictionary 520 (8th ed.2004). The allegations, in my opinion, adequately placed Dr. Trevisani on notice of his failure to comply with the terms of section 458.331(l)(m), by not keeping medical records which justified the treatment of the patient.
The ALJ next alternatively found that the charge of failing to document records of the pre-operative consultation was not supported by clear and convincing evidence because the evidence showed that shortly after appellant’s pre-operative consultation with his patient, he dictated notes of same, and that although the notes were missing from the patient’s chart, there was no reason to attribute their absence to appellant. In rejecting the finding that the proof did not support the charge, the Board accepted the ALJ’s finding that Dr. Trevisani had promptly dictated notes of the pre-operative consultation, but, because the ALJ had also found that the notes were missing, which the Board also accepted, it concluded that the failure of appellant to produce the notes was sufficient evidence of a violation of the record-keeping requirements of section 458.331(l)(m). Once a finding was made that Dr. Trevisani had prepared the notes, but was unable to produce them, the Board, based upon its interpretation of the language of the statute, appropriately, in my opinion, determined that appellant had violated the statute by failing to keep or maintain written medical records.
I am also unable to agree with the majority’s conclusion that the Board presented insufficient proof supporting the record-keeping charge because the reason for appellant’s non-retention of the records was his. discontinued employment with the health-care facility where he had performed the surgery. In this regard, the ALJ never made a specific finding that it was impossible for appellant to keep a record of his notes; instead, he concluded as a matter of law that although the “note is presently missing from the patient’s chart, ... there is no evidence ... upon which to attribute the absence of the missing document to any act or omission of Respondent.” Notwithstanding appellant’s argument that he cannot be held liable for the acts of others, or forces of nature beyond his control such as hurricanes or floods, the fact remains he could have taken minimal efforts to retain the notes, but failed to do so, as the Board, in its final order, apparently determined by concluding from the record that despite appellant’s “oral assertions to the eon-trary[, they] do not satisfy the statutory and regulatory requirement to ‘keep written medical records.’ ”
It is clear from the ALJ’s findings that appellant failed to exercise the measure of care the statute demanded for retention of medical notes. He found that when appellant terminated his professional relationship with the Florida Center for Profes *1111 sional Surgery, he left all of the patients’ medical records at the Center[2] instead of taking any copies with him, and it was nearly two years following the surgery that he first obtained some of the records through a discovery request. The statute specifically places the burden on a physician to keep written medical records “that justify the course of treatment of the patient, including, but not limited to, patient histories; examination results; test results; records of drugs prescribed, dispensed, or administered; and reports of consultations and hospitalizations.” Given the purpose of the statute, “ ‘so that neutral third parties can observe what transpired during the course of treatment of a patient,’ ” Robertson v. Department of Professional Regulation, Board of Medicine, 574 So.2d 153, 156 (Fla. 1st DCA 1990), I simply cannot believe that it was the legislative intent for a medical practitioner, who leaves a patient’s operating progress notes in the possession of a facility with which he is no longer employed and who makes no attempt whatsoever to secure their retention by obtaining copies of them, to be excused from any attending consequences by reason of their non-production.
For all the above reasons, I would affirm the Board’s disciplinary order.

. The quoted language above tracks that in the statute.

. The agreement between appellant and the Center forbade appellant from taking any of the patients’ charts from the premises. It does not appear from the findings, however, that Dr. Trevisani was restricted from making and keeping copies.