Jan M. TUVESON, Plaintiff-Appellee,

v.

FLORIDA GOVERNOR'S COUNCIL ON INDIAN AFFAIRS, INC., a Florida corporation and an agency of the State of Florida, Defendant-Appellant.

No. 82–3214.

United States Court of Appeals, Eleventh Circuit.

June 18, 1984.

Mitchell D. Franks, Asst. Atty. Gen., Dept. of Legal Affairs, Tallahassee, Fla., William J. Kendrick, Asst. Atty. Gen., Mitchell D. Franks, Chief Trial Counsel, Dept. of Legal Affairs, Tallahassee, Fla., for defendant-appellant.

P. Kevin Davey, Tallahassee, Fla., for plaintiff-appellee.

Before RONEY and HENDERSON, Circuit Judges, and DYER, Senior Circuit Judge.

RONEY, Circuit Judge:

Jan M. Tuveson filed suit against the Florida Governor's Council on Indian Affairs, Inc. claiming the Council fired her because she was not a native American Indian. She sought to recover damages for alleged race discrimination under both Title VII of the Civil Rights Act, 42 U.S.C.A. § 2000e *et seq.*, and 42 U.S.C.A. § 1983. The Title VII claim was dismissed on summary judgment on the ground that the Council is not an employer for Title VII purposes because of its limited number of employees. That ruling has not been appealed. Tuveson won a jury verdict of $124,500 on her § 1983 claim. Finding the Council to be the alter ego of the state and thus entitled to Eleventh Amendment immunity, we reverse.

The Florida Governor's Council on Indian Affairs was created by the Governor by executive order in 1974. Exec. Order No. 74–23 (1974). That order directed the Council to incorporate as a corporation not for profit. The Council's duties are to advise the Governor on matters affecting Florida's Indians, to represent their interests before state agencies, and to assist their advancement. Tuveson was hired by the Council for the position of secretary/staff assistant in 1974. She advanced to the position of executive director. On August 25, 1978, she was dismissed.

Tuveson requested a hearing from the Council on her termination. The Council denied her request on the ground that the Council was not a state agency and only state agencies were statutorily required to grant hearings. Tuveson obtained a declaratory judgment in state court that the Council was a state agency for purposes of the state law applicable to state agencies. *Florida Governor's Council on Indian Affairs v. Tuveson*, 384 So.2d 217 (Fla.Dist. Ct.App.1980). Pursuant to that decision the Council requested a hearing before the Florida Division of Administrative Hearings. Unsatisfied with the relief that could be obtained from such a proceeding, Tuveson moved for a stay and filed the present suit in federal district court.

The district court held that Tuveson's suit was not barred by the Eleventh Amendment. Although acknowledging the state court's ruling that the Council was a state agency, the court thought the state exercised too little control over the Council for it to be considered a state agency for Eleventh Amendment purposes.

■ The Eleventh Amendment grants immunity to the states in federal court. *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–1356, 39 L.Ed.2d 662 (1974). Suit is barred against state agencies "when the action is in essence one for the recovery of money from the state...." *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). Although the Supreme Court has held that the states are not immune from Title VII actions, *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), they are immune from money damages in 42 U.S.C.A. § 1983 suits. *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

■ Eleventh Amendment immunity does not extend to independent political entities, such as counties or municipalities. *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977). This is true even though the acts of a municipality or county are usually considered state action within the purview of the Fourteenth Amendment. *Edelman*, 415 U.S. at 667 n. 12, 94 S.Ct. at 1358 n. 12.

■ In determining which political entities are protected by the Eleventh Amendment, the Supreme Court has given special attention to the state law creating and defining the entity. *See, e.g., Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401, 99 S.Ct. 1171, 1177, 59 L.Ed.2d 401 (1979); *Mt. Healthy*, 429 U.S. at 280, 97 S.Ct. at 572; *see also Fouche v. Jekyll Island-State Park Authority*, 713 F.2d 1518, 1520 (11th Cir.

1983). The state law provides assistance in ascertaining whether the state intended to create an entity comparable to a county or municipality or one designed to take advantage of the state's Eleventh Amendment immunity. *Lake County Estates*, 440 U.S. at 401, 99 S.Ct. at 1177. Aspects of state law particularly relevant to this inquiry are: how state law defines the entity; what degree of control the state maintains over the entity; where funds for the entity are derived; and who is responsible for judgments against the entity. *Lake County Estates*, 440 U.S. at 401–02, 99 S.Ct. at 1177, 1178; *Mt. Healthy*, 429 U.S. at 280, 97 S.Ct. at 572. Several courts of appeals have regarded the final factor, who ultimately pays, as the most crucial. *E.g., Miener v. Missouri*, 673 F.2d 969, 980 (8th Cir.), *cert. denied*, 459 U.S. 909, 103 S.Ct. 275, 74 L.Ed.2d 171 (1982); *Blake v. Kline*, 612 F.2d 718, 723 (3d Cir.1979), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112 (1980). This Court has stated the most important factor is how the entity has been treated by the state courts. *Huber, Hunt & Nichols, Inc. v. Architectural Stone Co.*, 625 F.2d 22, 25 (5th Cir.1980).

■ The exact status of the Council on Indian Affairs under Florida law is uncertain. Although created by executive order, that order directed that the Council register as a non-profit corporation. Nevertheless, the Governor created the Council for the purpose of carrying out a governmental, not a proprietary, function. The Council was charged with advising the Governor and other state agencies and providing "technical assistance for the educational economic, social and cultural advancement of the Indian people within the State of Florida." Exec. Order No. 74–23 (1974). At the time of its creation, the Council fit the definition of an executive branch council.[1] Fla.Stat. § 20.03(7) (1979). That statutory definition has since been amended,

---

**1.** Fla.Stat. § 20.03(7) (1979): " 'Council' means an advisory body appointed to function on a continuing basis for the study of problems aris-

ing in a specified functional or program area of state government and the recommendation of solutions and policy alternatives."

however, and the Council no longer comes within it.[2] Fla.Stat.Ann. § 20.03(7). Counsel has cited us to an act of the legislature which transfers the Council, by means of a "type IV transfer", from the Department of Community Affairs, an executive department, to the Executive Office of the Governor. Fla.Laws 79–190, § 4 (1979). A type IV transfer is "the merging of an identifiable program, activity, or function of an existing agency into a department." Fla.Stat.Ann. § 20.06(4). Also instructive on the issue of the Council's status under state law, is the state court decision in *Florida Governor's Council on Indian Affairs v. Tuveson*, 384 So.2d 217 (Fla.Dist. Ct.App.1980). The court held that for the purposes of a state anti-discrimination statute[3] and the state administrative procedures act[4] the Council was a state agency.

■ At times the council has acted as if it is a state agency and other agencies have recognized the Council as such. The Council was granted the right to use the state telephone system, a privilege granted only to the state.[5] The Council published notice of certain actions in Florida Administrative Weekly, an official publication for state agencies.[6] The Council applied for and received an exemption from state sales taxes.[7]

At other times, however, the Council has acted as if independent from the state. One state agency refused to grant the Council's employees coverage under the state's career service system.[8] When Tuveson filed suit against the Council, the Council retained private counsel despite the State Attorney General's statutory duty to

---

**2.** Fla.Stat.Ann. § 20.03(7): " 'Council' means an advisory body *created by specific statutory enactment* and appointed to function on a continuing basis for the study of the problems arising in a specified functional or program area of state government and to provide recommendations and policy alternatives." (emphasis added).

**3.** Fla.Stat. § 112.041 (Supp.1978) (repealed Fla. Laws 79–190, § 42 (1979)):

(1) It shall be against the public policy of this state for the governing body of any state agency, board, commission, department or state officer, because of the race, color, sex, religious creed, or national origin of any individual to refuse to hire or employ, to bar or to discharge from employment such individuals or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions, or privileges of employment, if the individual is the best able and most competent to perform the services required.

(2) Any individual claiming to be aggrieved by an alleged unlawful employment practice under this section may file a complaint with said agency, board, commission, department, or state official, and said individual shall be entitled to a hearing and judicial review as provided in chapter 120.

**4.** Fla.Stat.Ann. § 120.52(1):

As used in this act:

(1) "Agency" means:

(a) The Governor in the exercise of all executive powers other than those derived from the constitution.

(b) Each other state officer and each state department, departmental unit described in s. 20.04, commission, regional planning agency, board, district and authority, including, but not limited to, those described in chapters 160, 163, 298, 373, 380, and 582, except any legal entity or agency created in whole or in part pursuant to chapter 361, part II.

(c) Each other unit of government in the state, including counties and municipalities, to the extent they are expressly made subject to this act by general or special law or existing judicial decisions.

**5.** *See* Fla.Stat.Ann. § 287.25; Ch. 13C–1, Fla.Admin.Code. Chapter 13C–1 provides, in part:

13C–1.01 *General.* The Division of Communications shall act as a centralized point of contact for the commercial telecommunications industry to interface with the state. This division shall provide rules and regulations to state agencies for procuring telephone services.

13C–1.02 *Definitions.* For the purpose of this chapter, each of these words shall have the following meanings:

(3) Agency—Any state board, commission, department or officer authorized by law to make rules.

**6.** *See* Fla.Stat.Ann. § 120.55.

**7.** *See* Fla.Stat.Ann. § 212.08(6).

Section 212.08(6) provides: "There shall also be exempt from the tax imposed by this chapter sales made to the United States government, the state, or any county, municipality, or political subdivision of this state."

**8.** *See* Fla.Stat.Ann. §§ 110.203, 216.011.

"appear in and attend to" suits involving the state. Fla.Stat.Ann. § 16.01(4).

We have little record information on the funding of the Council and the degree of state control over the Council. The record on appeal does not contain the Council's budget nor does it reveal whether the Council's budget is reviewed by the Governor. The Governor does have total control over the membership on the Council. The executive order which created the Council named the Chairman of the Seminole and the Miccosukee tribes as co-chairman of the Council. The Governor, with the advice of the co-chairman, appoints the other thirteen Council members. The Council receives partial funding from the state. The legislature, however, has authorized no employee positions under the General Appropriations Act. Some federal aid is provided through the CETA program. The executive order gives the Council no authority to raise money through taxes or by issuing bonds. As a non-profit corporation, however, the Council has power to make contracts, issue notes or bonds, acquire real property, and mortgage its assets. Fla. Stat.Ann. § 617.021. The extent to which the Council has exercised these powers is not indicated by the record.

Responsibility for any judgment in this case against the Council will be assumed by the state through the Florida Risk Management Trust Fund. Fla.Stat.Ann. § 284.-30 *et seq.* This admission was placed in the record by the state after the Council had lost on the merits at trial.

Following *Fouche v. Jekyll Island-State Park Authority,* 713 F.2d 1518 (11th Cir. 1983), we hold that the Council is a state agency entitled to Eleventh Amendment immunity. Most significant to this determination are the functions of the Council, the legislature's treatment of the Council, the Council's own actions prior to Tuveson's firing, and the state court decision declaring the Council a state agency.

 Tuveson argues that even if the Council is entitled to Eleventh Amendment immunity, that immunity has been waived or the Council should be estopped from raising it. Waiver of Eleventh Amendment immunity will be found "only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1361, 39 L.Ed.2d 662 (1974) (quoting *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 29 S.Ct. 458, 53 L.Ed. 742 (1909)). A state's waiver of its sovereign immunity does not waive its constitutional Eleventh Amendment immunity to suits in federal court. *Florida Department of Health and Rehabilitative Services v. Florida Nursing Home Association,* 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981). Tuveson argues the Governor's direction that the Council register as a not-for-profit corporation waived the Council's Eleventh Amendment immunity since a non-profit corporation can "[s]ue and be sued, ... in all actions and proceedings in its corporate names to the same extent as a natural person." Fla.Stat.Ann. § 617.021(2). This statutory language, however, would not waive the Council's sovereign immunity. *Spangler v. Florida State Turnpike Authority,* 106 So.2d 421 (Fla.1958). It certainly is not the type of explicit waiver of Eleventh Amendment immunity required by the Supreme Court. *See Florida Nursing Home Association,* 450 U.S. at 150, 101 S.Ct. at 1034. The Attorney General's appearance on the Council's behalf also did not constitute waiver. Under the Florida Constitution, waiver of immunity can only occur by explicit act of the state legislature. Fla. Const. Art. X § 13; *Manatee County v. Town of Longboat Key,* 365 So.2d 143 (Fla.1978); *see Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 466–67, 65 S.Ct. 347, 351–352, 89 L.Ed. 389 (1945).

We note that the federal district courts have differing views as to whether certain Florida statutes constitute a waiver of constitutional immunity in certain actions. *Compare Meeker v. Addison,* 577 F.Supp. 751 (S.D.Fla.1983), *with Shinholster v.*

*Graham,* 527 F.Supp. 1318, 1329–32 (N.D. Fla.1981).

Tuveson contends that the Council should be estopped from raising Eleventh Amendment immunity because in state court the Council claimed not to be a state agency. Under the doctrine of equitable estoppel, a party may not maintain inconsistent positions in successive law suits when he has successfully convinced a court of the merit of his position in the first action. *Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578 (1895); *Jett v. Zink,* 474 F.2d 149, 154–55 (5th Cir.1973), *cert. denied,* 414 U.S. 854, 94 S.Ct. 153, 38 L.Ed.2d 104 (1973); *see* 1B J. Moore & T. Currier, *Moore's Federal Practice,* ¶ 0.405[8], at 238–39 (1982). Clearly, equitable estoppel does not apply in this case. First, the Council has not taken inconsistent positions. Whether the Council is a state agency for the purpose of applying certain Florida statutes is a separate and independent question from whether the Council was a state agency for Eleventh Amendment purposes. *Miller-Davis Co. v. Illinois Southern Toll Highway Authority,* 567 F.2d 323, 330 (7th Cir.1977) (Eleventh Amendment immunity is a matter of federal law). Second, and most significant, the Council lost in state court.

REVERSED.