The Honorable Alicia L. Salisbury Senator, Twentieth District 1455 S.W. Lakeside Drive Topeka, Kansas 66604-2556
Dear Senator Salisbury:
As senator for the twentieth district, you request our opinion regarding the status of the Kansas homestead rehabilitation corporation (homestead corporation). Specifically, you ask whether the homestead corporation is a private corporation or a state agency.
State rural rehabilitation corporations were organized in 1934-35 to assist the federal and state governments in the administration of the funds provided by the Federal Emergency Relief Act of 1933 (48 Stat. 155). Under the act, the reconstruction finance corporation was authorized to make $500,000,000 available for purposes of the act and not to exceed $250,000,000 of this sum could be granted to the several states. S. Rep. No. 403, 81st Cong., 2d Sess. 2, reprinted in 1950 U.S. Code Cong. Admin. News 2202, 2202. The funds set aside for rural rehabilitation were used for rehabilitation loans, providing seed, livestock, equipment, additional lands, training in farm and home management, and relocating displaced farmers. Id at 2203. The rural rehabilitation corporations were to possess the authority "to hold title to land, chattels, and other property, and engage in buying, selling, leasing or any other business transactions that may be found essential in furtherance of the Rural Rehabilitation Program." Objectives andSuggested Procedure for Rural Rehabilitation, June 27, 1934. The rural rehabilitation corporations formed in the several states to carry on this work were all formed under state or territorial law. S. Rep. No. 403, 81st Cong., 2d Sess. 2, reprinted in 1950 U.S. Code Cong. Admin. News 2202, 2203. By 1935, 45 rural rehabilitation corporations were established. John G. Stutz, A Special Corporate Status Report: TheKansas Homestead Rehabilitation Corporation, Index 3 (Kyle Stephens, ABrief History of the Founding of the National Association of RuralRehabilitation Corporations, 1990) 1991. The corporations were generally one of two types: first, independent, established in states which could not possess or hold property or accept federal funds; second, state-controlled, established in states which could hold property or accept federal funds.
By executive order issued in 1932, the governor of the state of Kansas established the Kansas emergency relief committee (relief committee). John G. Stutz, supra, (A Brief of the Legal Status of the KansasHomestead Rehabilitation Corporation As Reported to Kansas Governor By aVolunteer Kansas State Governmental Research Agency) March 27, 1992; Hugh R. McCullough, Memorandum, June 19, 1991. See also, 1936 Senate Resolution No. 15, Journal of the Senate, July 7, 1936; Gov. Walter A. Huxman, Executive Order, August 31, 1937. On October 15, 1934, the homestead corporation was organized at the request of the federal emergency relief administration "in order that the Kansas Emergency Relief Committee might have a legal entity to carry on certain phases of rural and urban rehabilitation." John G. Stutz, supra, Index 3, Exhibit 6 (Brief of Albert B. Martin, Counsel for the Kansas Homestead Rehabilitation Corporation). Some of the functions to be performed by the homestead corporation were beyond the authority of the relief committee. Id. It appears that the homestead corporation was established without express statutory authority from the state. John G. Stutz, supra, Index 9 (John G. Stutz, Correspondence, April 15, 1991).
 "[S]uch authority as may have been given to the [homestead corporation] to manage the [r]ehabilitation program was derived from the Federal Emergency Relief Administration and the orders of the Executive Director of the [relief committee].
 "Inasmuch as the [homestead corporation] operated only on funds from Federal sources there is no reference to the Corporation in any of the Executive Orders made by the Governor in which allocation to the [relief committee] of funds from the State Treasury was concerned." John G. Stutz, supra, Index 11, Exhibit 7 (Kansas Emergency Relief Committee, Minutes Relative to Corporation).
The homestead corporation was organized as a non-profit private corporation. Kansas Homestead Rehabilitation Corporation, Charter, September 25, 1934. It was organized to serve "as an agency and instrumentality in carrying on rehabilitation activities in, of and for the State of Kansas." Kansas Homestead Rehabilitation Corporation, Minutes (Special Meeting), March 11, 1935; John G. Stutz, supra, Index 3, Exhibit 16 (Gov. Walter A. Huxman, Correspondence, February 20, 1937). See also, John G. Stutz, supra, Index 3, Exhibit 6 (Albert B. Martin, Brief, November, 1935); John G. Stutz, supra, Index 11, Exhibit 6 (Federal Emergency Relief Administration, Summary of InformationResulting From the Joint Conference of Regional Directors of the LandProgram and Rural Rehabilitation Advisers [sic], December 6, 1934); S. Rep. No. 403, 81st Cong., 2nd Sess. 2, reprinted in 1950 U.S. Code Cong. Admin. News 2202, 2204; Kansas Homestead Rehabilitation Corporation, By-Laws. Eight persons, each holding one share of stock without nominal or par value, constituted the board of directors. Kansas Homestead Rehabilitation Corporation, By-Laws.
 "The majority of the stockholders and directors of this Corporation are members of the Emergency Relief Administration of Kansas or its staff. Shares of stock sold, transferred or surrendered to the Corporation by the stockholders shall be retransferred or reissued by the Corporation in such a manner as to continue majority ownership of stock in the members of the Emergency Relief Committee of Kansas or its staff as long as said Committee is continued and thereafter as the By-Laws shall then provide." Kansas Homestead Rehabilitation Corporation, By-Laws.
The shares of stock were then pledged to the federal government as security for the proper use of federal funds. John G. Stutz, supra, Index 11, Exhibit 3 (Lawrence Westbrook, Correspondence, January 14, 1935); Hugh R. McCullough, Memorandum, June 19, 1991.
On June 22, 1935, the comptroller general of the United States ruled that the federal government could not make available to the state rural rehabilitation corporations any funds appropriated under the emergency relief appropriation act of 1935. John G. Stutz, supra, Index 11, Exhibit 9 (Kansas Homestead Rehabilitation Corporation, Minutes, June 24, 1935); Hugh R. McCullough, Memorandum, June 19, 1991. It was determined that after July 1, 1935, rural rehabilitation activities in the state would be administered by the federal resettlement administration and that federal machinery should be established in each state for such purposes. Id. To accomplish this procedure, all property, assets, and records of the homestead corporation were to be transferred to the resettlement administration. Id. At the request of the federal emergency relief administration, the by-laws of the homestead corporation were amended to reflect that the homestead corporation was an agency of the federal emergency relief administration. Hugh R. McCullough, Memorandum, June 19, 1991.
However, Mr. John G. Stutz, acting as president of the homestead corporation, balked at transferring the assets of the corporation to the federal emergency relief administration, and sought the assistance of the Kansas Attorney General. In an opinion issued October 17, 1935, to Mr. Stutz, Attorney General Clarence V. Beck stated:
 "I find no statute in the State of Kansas which authorizes the Governor to take part in the conveyance of the funds and other property in question held by the [homestead corporation] to the United States of America or to the Resettlement Administration of the United States of America, and I do not find any statute of the State of Kansas to authorize the Attorney General of the State of Kansas to approve such disposition of such funds or other property.
 "In the absence of any statute of Kansas authorizing the Attorney General of the State to approve the proposed sale and transfer by the [homestead corporation] to the United States of America, or to the Resettlement Administration of the United States of America, I think I am not authorized to approve in writing the proposed sale and transfer.
 "With my present information upon the subject, therefore, I must respectfully decline to give such an approval to the proposed sale and transfer.
 "I do not express any opinion upon the subject other than as above set forth."
The homestead corporation continued in existence through 1936 without further funding from the federal government. Hugh R. McCullough, Memorandum, June 19, 1991.
In 1937, Mr. Stutz resigned his position with the Kansas emergency relief commission. Pursuant to the charter and by-laws of the homestead corporation, Mr. Stutz's resignation made him ineligible to continue his service on the board of directors of the homestead corporation. John G. Stutz, supra, Index 3 (Gov. Walter A. Huxman, Correspondence, January 15, 1937).
In 1937, the legislature adopted legislation which authorized the transfer of funds, properties, and assets of the Kansas emergency relief committee and the homestead corporation to the state board of social welfare. L. 1937, Ch. 328, sec. 1, 2; 1937 House Bill No. 571. However, while the legislation regarding the relief committee was signed by the governor, Gov. Walter A. Huxman vetoed the legislation regarding the homestead corporation, stating that:
 "I have relied upon the legal advice of . . . three high-class attorneys who are members of the [homestead corporation]. They have advised me that there is a matter of dispute between the [homestead corporation] and the Federal Resettlement Administration as to the ownership of certain assets, and that in the present state of the controversy it would be impossible for the [homestead corporation] to comply with the provisions of this law . . . .
 "In [vetoing] this I wish to say that there is nothing to prevent the [homestead corporation], when it is finally liquidated, to deliver the assets to the State Board of Social Welfare and that when this corporation is liquidated and the ownership of the assets determined, this intent and purpose will be carried out." 1937 Journal of the House 872.
On March 31, 1938, the United States of America, acting by and through the secretary of agriculture, successor to the resettlement administration, and the homestead corporation executed an agreement whereby the homestead corporation would "bargain, sell, convey, transfer and assign to the United States of America, excepting office furniture and office equipment, all of the assets and property, tangible and intangible, of whatever character and wherever located, of which the Corporation is seized or possessed . . . ." John G. Stutz, supra, Index 3, Exhibit 9 (Agreement of Transfer Between the Kansas Homestead Rehabilitation Corporation and the United States of America, March 31, 1938); Hugh R. McCullough, Memorandum Exhibit 14, June 19, 1991.
 "In 1950, another law began a change that took over 20 years to culminate. That year congress passed the Rural Rehabilitation Corporation Trust Liquidation Act, which directed the Secretary of Agriculture to liquidate the corporation trusts in an expeditious fashion. The secretary complied, but virtually all of the states that year signed new trust agreements with the Farmers Home Administration, generally allowing FmHA to use the assets for insured operating and farm ownership loans.
 "In the 1960s, however, interest grew in reestablishing state control over the assets. Texas Rural Communities, for example, filed legal action against FmHA in 1964, seeking to reassert its control over the assets. A federal appeals court ruled in 1964 that FmHA must allow states to manage their own assets.
 "Still progress was slow. States negotiated with FmHA on the parameters under which assets would be returned. Primarily at issue was how the states would cover the cost of administering the assets. Other issues concerned the purposes for which the assets could be used.
 "The negotiations culminated in 1973 with adoption by FmHA of a model trust agreement, allowing states who requested it the right to administer their own assets. FmHA agreed to allow states to use up to three percent of the total asset value for administrative expenses. The purposes for which the assets could be used were specifically designated as agricultural and educational lending, but FmHA agreed to allow the states to use the assets for any rural rehabilitation purpose with approval of FmHA. Most states still operate under a similar agreement, with the notable exception of New Jersey.
 "Under the new agreements, only 18 of the original corporations remained private corporations. The remainder have been succeeded by state agencies, generally state departments of agriculture." John G. Stutz, supra, Index 3 (Kyle Stephens, A Brief History of the Founding of the National Association of Rural Rehabilitation Corporations, 1990).
On February 11, 1952, the homestead corporation applied to the United States secretary of agriculture for return of the assets of the homestead corporation. John G. Stutz, supra, Index 11, Exhibit 17 (Application for Return of Assets of the Kansas Homestead Rehabilitation Corporation, February 11, 1952). The application was accepted on the tenth day of October, 1952. Id, Index 11, Exhibit 18 (Transfer Between the United States of America and the Kansas Homestead Rehabilitation Corporation, November 10, 1952). The homestead corporation then entered into a new trust agreement with FmHA. Id, Index 11, Exhibit 19 (Agreement for Administration of Assets of the Kansas Homestead Rehabilitation Corporation, November 28, 1952). It appears that the homestead corporation continued to function under the trust agreement until January, 1970. At a special meeting held on the 15th of January, 1970, the board of directors of the homestead corporation adopted the following resolution:
 "`RESOLVED, that the Kansas Homestead Rehabilitation Corporation accept the return of the Trust Assets from the United States of America acting through the Farmers Home Administration pursuant to the terms an[d] conditions of the instrument entitled "LIQUIDATION AGREEMENT" as of January 31, 1970;
 "BE IT RESOLVED FURTHER, that the President of the Corporation can and he is hereby authorized and directed to sign said "LIQUIDATION AGREEMENT" on behalf of the Kansas Homestead Rehabilitation Corporation, and to cause the same to be attested to by the Secretary and the official seal of the Corporation to be affixed thereto." John G. Stutz, supra, Index 11, Exhibit 20.
The assets were returned to the homestead corporation and in March, 1975, a use agreement was arrived at along with a memorandum of understanding under which the homestead corporation administered the assets returned to it by FmHA. Hugh R. McCullogh, Memorandum, June 19, 1991. See John G. Stutz, supra, Index 11, Exhibit 21 (Kansas Homestead Rehabilitation Corporation, Minutes, March 21, 1975). The homestead corporation continues to operate under the use agreement and submits annual reports to the FmHA. Hugh R. McCullough. None of the activities undertaken by the homestead corporation were pursued at the request or direction of the legislative or executive branches of government for the state of Kansas.
In order to determine whether the Kansas homestead rehabilitation corporation constitutes a state agency, we find it helpful to review cases regarding whether certain entities are protected by the eleventh
amendment to the constitution of the United States. In Tuveson v. FloridaGovernor's Council on Indian Affairs, 734 F.2d 730 (11th Cir. 1984), the court provided that relevant aspects included: "how state law defines the entity; what degree of control the state maintains over the entity; where funds for the entity are derived; and who is responsible for judgments against the entity." Id at 732. Among the factors considered in Kiper v. Louisiana State Board of Elementary and Secondary Education,592 F. Supp. 1343, 1352 (La. 1984) were: the extent of the entity's independent management authority; the treatment of the entity by the courts of the state; whether the state is responsible for the debts of the entity; and the degree of general financial autonomy of the entity.
As noted above, the homestead corporation was established as a private non-profit corporation and has filed annual reports as such since its incorporation. Its officers have always been appointed pursuant to the by-laws of the corporation, with no state involvement or intervention. The corporation was formed at the request of the federal government to perform functions which the state could not undertake. At its inception, the corporation was organized to serve "as an agency and instrumentality in carrying on rehabilitation activities in, of and for the State of Kansas." At the request of the federal administration, the by-laws of the corporation stated at one time that the corporation was an agency of the federal administration. While members of the Kansas legislature attempted more than once to enact legislation pertaining to the corporation, none of the legislation became law. When the federal government attempted to acquire the assets of the corporation, the Attorney General for the state of Kansas determined that he did not possess the statutory authority to approve the transfer of the assets to the federal government; the assets of the corporation were eventually transferred through a trust arrangement to the federal government. When the federal court determined that the federal government did not have the authority to continue to control the assets of the corporation, officers of the corporation, rather than the state, filed the application requesting return of the assets of the corporation. The budget of the homestead corporation is not reviewed by the legislature. Based on these factors, we determine that the Kansas homestead rehabilitation corporation is not a state agency.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Richard D. Smith Assistant Attorney General
RTS:JLM:RDS: