MICCOSUKEE TRIBE OF INDIANS OF FLORIDA, a federally recognized Indian Tribe, Plaintiff-Appellant,

v.

FLORIDA STATE ATHLETIC COMMISSION, Alvin Goodman, Florida State Athletic Commission, et al., Defendants-Appellees.

No. 99-13669.

United States Court of Appeals,

Eleventh Circuit.

Sept. 13, 2000.

Appeal from the United States District Court for the Southern District of Florida. (No. 99-00347-CV-DLG), Donald L. Graham, Judge.

Before ANDERSON, Chief Judge, and DUBINA and SMITH[*], Circuit Judges.

DUBINA, Circuit Judge:

Plaintiff, the Miccosukee Tribe of Indians of Florida ("Tribe"), filed suit against the Florida State Athletic Commission ("Florida Commission") and several of its officials and representatives, alleging violations of the Professional Boxing Safety Act, 15 U.S.C. §§ 6301-6313, the Equal Protection Clause of the Fourteenth Amendment, and federal common law. The district court dismissed the Tribe's complaint, finding that the Tribe failed to allege an injury in fact. The district court also found that the Florida Commission was entitled to Eleventh Amendment Immunity. We hold that the Tribe fails to allege any injury as to its Equal Protection claim, but that the Tribe does allege a sufficient injury as to its tax claim. We also affirm the district court's Eleventh Amendment Immunity decision.

*I. Background*

The Tribe is a federally-recognized Indian tribe exercising powers of self-governance. In December 1998, the Tribe established the Miccosukee Athletic Commission ("Miccosukee Commission"). The Miccosukee Commission regulates professional boxing matches held within the Miccosukee reservation. Florida has a similar entity—the Florida State Athletic Commission—to regulate professional boxing matches

[*]Honorable Edward S. Smith, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

within Florida. Both the Miccosukee Commission and the Florida Commission license and appoint boxing officials and regulatory staff to officiate boxing matches. The Commissions employ many of the same officials.

Soon after the Tribe created the Miccosukee Commission, the Florida Commission threatened boxing officials with adverse employment action if they declined a state assignment in order to accept an assignment with the Miccosukee Commission. According to the Tribe, the Florida Commission has not similarly threatened boxing officials who accept assignments with non-Indian entities. In addition, the Florida Commission has attempted to tax boxing promoters who conduct professional boxing matches on the Miccosukee Reservation as if the matches occurred in Florida. Those taxes require, *inter alia,* that the promoter pay a tax on the sale of broadcasting rights and on the proceeds from a pay-per-view operator.

*II. Discussion*

A.      Standing

The Tribe argues that the district court incorrectly held that the Tribe failed to allege an injury in fact and thereby lacked Article III standing to bring this lawsuit. This court reviews *de novo* a district court's order dismissing a complaint for lack of Article III standing. *See Florida Ass'n of Med. Equip. Dealers, Med-Health Care v. Apfel,* 194 F.3d 1227, 1229 (11th Cir.1999).

In order to establish Article III standing, a plaintiff must demonstrate: (1) an injury in fact; (2) a causal connection between the injury and the conduct complained of; and (3) that the injury is likely to be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). An "injury in fact [consists of] an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560, 112 S.Ct. 2130 (citations and internal quotations omitted). Thus, to satisfy the injury prong of Article III standing, a plaintiff must "present 'specific, concrete facts' showing that the challenged conduct will result in a 'demonstrable, particularized injury' to the plaintiff." *Cone Corp. v. Florida Dep't of Transp.,* 921 F.2d 1190, 1204 (11th Cir.1991) (quoting *Warth v. Seldin,* 422 U.S. 490, 508, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)).

An allegation of an abstract injury will not suffice. *See Whitmore v. Arkansas,* 495 U.S. 149, 155, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) ("The complaint must allege an injury to himself that is 'distinct and palpable,' as opposed to merely 'abstract' ....") (citations omitted); *see also E.F. Hutton & Co., Inc. v. Hadley,* 901 F.2d 979, 984 (11th Cir.1990) ("Plaintiffs in the federal courts must have a personal stake in the outcome of the case, and must allege some threatened or actual injury resulting from the putatively illegal action. Abstract injury is not enough ....") (citations and internal quotations omitted).

1.     Equal Protection Claim

With regard to the Tribe's Equal Protection claim, the district court correctly held that the Tribe's complaint fails to set forth a "particularized injury." In its complaint, the Tribe asserts that the Florida Commission acted unconstitutionally by making oral and written threats of adverse employment action against boxing officials if they declined a state boxing assignment in order to accept a Miccosukee boxing assignment. The Florida Commission, however, did not similarly threaten boxing officials who declined a state boxing assignment in order to accept an assignment from another state. The Tribe alleges that these actions "unequally and unfairly burdened the Tribe and its Commission," (Compl. at ¶ 58), and "[t]he actions of the Defendants operate to the detriment of the ... Tribe," (Compl. at ¶ 64).

The Tribe, however, does not allege how the Florida Commission's actions have burdened it or operated to its detriment. For instance, the Tribe does not allege that the Florida Commission's actions prevented the Tribe from conducting any particular boxing match. The Tribe also does not allege that the Florida Commission prevented or even hindered its ability to hire, train, or procure boxing officials from within or outside of Florida for its matches. Nor does it allege that the Florida Commission's activities will have such an effect in the future.[1] Nowhere in the complaint does the Tribe identify any particularized injury

---

[1]The complaint does allege that the defendants acted with the intention of discouraging boxing officials from officiating boxing matches conducted under the Miccosukee Commission. Even though a defendant intends his acts to cause a particular injury, the defendant's acts, however, may not cause the intended injury. Thus, a plaintiff still must allege facts to show that the defendant actually injured the plaintiff or could do so in the future.

resulting from the Florida Commission's alleged misconduct.[2]  Instead, the Tribe's complaint only sets forth

abstract injuries.  *Cf. Bennett v. Spear,* 520 U.S. 154, 167-68, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997)

(holding that the plaintiff adequately alleged an injury in fact where it alleged that it would receive less

irrigation water from a Bureau as a result of restrictions imposed on the Bureau from the challenged agency

opinion).

Even though the Tribe's complaint sets forth facts from which we could imagine an injury sufficient

to satisfy Article III's standing requirements, we should not speculate concerning the existence of standing,

nor should we imagine or piece together an injury sufficient to give plaintiff standing when it has

demonstrated none.  *See Cone Corp.,* 921 F.2d at 1210.  The plaintiff has the burden to "clearly and

specifically set forth facts sufficient to satisfy [ ] Art. III standing requirements." *Whitmore,* 495 U.S. at 155,

110 S.Ct. 1717; *see also Warth,* 422 U.S. at 518, 95 S.Ct. 2197 ("It is the responsibility of the complainant

clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and

the exercise of the court's remedial powers.").  If the plaintiff fails to meet its burden, this court lacks the

power to create jurisdiction by embellishing a deficient allegation of injury.  *See Whitmore,* 495 U.S. at 155,

110 S.Ct. 1717 ("A federal court is powerless to create its own jurisdiction by embellishing otherwise

deficient complaints of standing.").  In this case, the Tribe fails to allege a "particularized injury," and thus,

lacks Article III standing to bring a claim under the Equal Protection Clause.  Accordingly, we affirm the

district court's order dismissing the Tribe's Equal Protection claim.

2.      Tax Claim

We now turn to the question of whether the Tribe has standing to challenge Florida's authority to tax

a non-Indian boxing promoter on revenues gained from a boxing match conducted on the Tribe's reservation.[3]

_____

[2]For example, the complaint alleges that the Tribe and the Florida Commission held a boxing match on
January 30, 1999.  Consequently, boxing officials faced a precarious situation if they decided to work for
the Tribe, instead of the Florida Commission.  The complaint, however, fails to mention what happened
and what, if any, injuries the Tribe suffered.

[3]The record on appeal does not indicate which tax the Florida Commission attempted to levy.  The
complaint alleges that the Florida Commission threatened to assess state taxes upon promoters for
activities relating to professional boxing matches conducted within the Tribe's reservation.  The

The district court held that the Tribe lacked standing because it failed to allege an injury. In particular, the district court noted that the Tribe did not allege that the tax on promoters hindered the Tribe's efforts to conduct boxing matches or to collect its taxes. In turn, the district court held that absent these allegations, the Tribe acted as a third party challenging the imposition of a tax on promoters. Absent exceptional circumstances, a third party does not have standing to challenge injury to another party. *See Warth,* 422 U.S. at 499, 95 S.Ct. 2197.

Even though the Tribe does not allege that the tax hindered its ability to conduct boxing matches or to collect its boxing taxes, the Tribe has a legitimate basis for standing—that the state's tax on boxing promoters infringes upon the Tribe's sovereignty. The Supreme Court has consistently recognized that a tribe has an interest in protecting tribal self-government from the assertion by a state that it has regulatory or taxing authority over Indians and non-Indians conducting business on tribal reservations. *See White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 142, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980); *see also Ramah Navajo Sch. Bd. v. Bureau of Revenue of New Mexico,* 458 U.S. 832, 845, 102 S.Ct. 3394, 73 L.Ed.2d 1174 (1982) (upholding an Indian Tribe's challenge to a state's attempt to tax the gross receipts a non-Indian construction company received from constructing a school on reservation property to educate tribal children); *Washington v. Confederated Tribes of the Colville Indian Reservation,* 447 U.S. 134, 156-57, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980) (rejecting on the merits an Indian Tribe's claim that a state's attempt to tax on-reservation cigarette sales to non-Indians violated the Tribe's sovereignty).

In *Bracker,* the Supreme Court recognized "two independent but related barriers" to the assertion of state regulatory authority over commercial activity on an Indian reservation: (1) state authority may be

complaint, however, does not identify the particular tax provision. On appeal, the Florida Commission argues that it attempted to impose a tax pursuant to Fla. Stat. § 548.061, which is a tax on the proceeds a boxing promoter receives from a pay-per-view operator. During oral arguments, the Tribe, however, argued that the Florida Commission attempted to impose a tax pursuant to Fla. Stat. § 548.06(1) which is a tax on the total gross receipts from a boxing match, including the proceeds from the sale or lease of broadcasting and television rights. At this stage in the litigation, we need not determine which tax the Florida Commission sought to levy. We accept as true the complaint's well pleaded facts, even if disputed. *See S & Davis Int'l, Inc. v. Yemen,* 218 F.3d 1292, 1298 (11th Cir.2000). Thus, we will examine the standing issue based on the Tribe's allegation that the Florida Commission attempted to tax promoters for activities relating to boxing matches conducted on the Tribe's reservation.

pre-empted by federal law; or (2) interfere with a tribe's sovereignty. 448 U.S. at 142, 100 S.Ct. 2578. In particular, the Court explained that a state tax may unlawfully infringe "on the right of reservation Indians to make their own laws and be ruled by them." *Id.; see also Fisher v. District Court,* 424 U.S. 382, 386, 96 S.Ct. 943, 47 L.Ed.2d 106 (1976) (per curiam) ("The right of the Northern Cheyenne Tribe to govern itself independently of state law has been consistently protected by federal statute."); *Williams v. Lee,* 358 U.S. 217, 223, 79 S.Ct. 269, 3 L.Ed.2d 251 (1959) ("There can be no doubt that to allow the exercise of state jurisdiction here would undermine the authority of the tribal courts over Reservation affairs and hence would infringe on the right of the Indians to govern themselves.").

Moreover, the Supreme Court has explicitly held that when challenging a state's taxation of a business located on an Indian reservation, an Indian tribe satisfies Article III's injury requirement by alleging that the tax infringes upon its sovereignty. *See Moe v. Confederated Salish & Kootenai Tribes of the Flathead Reservation,* 425 U.S. 463, 468 n. 7, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976). In *Moe,* the Indian tribe challenged a Montana law that required stores located on Indian lands to collect Montana's cigarette sales tax on retail cigarette sales to both Indians and non-Indians. *See id.* at 467-68, 96 S.Ct. 1634. The Supreme Court stated that:

> Our conclusions in Parts II and III, *infra,* that the District Court, with subject-matter jurisdiction over the Tribe's claims, properly entered injunctive relief in its favor implicitly embrace a finding that the Tribe, *qua* Tribe, has a discrete claim of injury with respect to these forms of state taxation so as to confer standing upon it apart from the monetary injury asserted by the individual Indian plaintiffs. Since the substantive interest which Congress has sought to protect is tribal self-government, such a conclusion is quite consistent with other doctrines of standing. *See, e.g., Warth v. Seldin,* 422 U.S. 490, 498-499, 95 S.Ct. 2197, 2205-2206, 45 L.Ed.2d 343, 354-355 (1975).

*Id.* at 468 n. 7, 96 S.Ct. 1634. Therefore, the Tribe's allegation that Florida's attempt to tax a non-Indian conducting business on its reservation violates the Tribe's right to self-governance satisfies the injury in fact requirement for standing. Thus, we reverse the district court's order dismissing the Tribe's tax claim.[4]

B.      Eleventh Amendment Immunity

---

[4]Alternatively, the Florida Commission argues that this court can affirm the district court's holding on the basis that the Tribe can establish no set of facts under which Florida's tax would be preempted by federal law or infringe upon the Tribe's right to self-governance. Because the district court did not address this issue, we decline to address it on appeal.

The Eleventh Amendment grants immunity to the states from suits in federal court. *See Tuveson v. Florida Governor's Council on Indian Affairs, Inc.,* 734 F.2d 730, 732 (11th Cir.1984). This immunity extends to state agencies, but does not extend to independent entities, such as counties or municipalities. *See id.* In determining whether the Eleventh Amendment provides immunity to a particular entity, this court examines the following factors: (1) how state law defines the entity; (2) what degree of control the state maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity. *See id.* (citing *Lake Country Estates, Inc. v. Tahoe Reg'l Planning Agency,* 440 U.S. 391, 401-02, 99 S.Ct. 1171, 1177, 59 L.Ed.2d 401 (1979)). After examining these four factors, we conclude that the Florida Commission is an arm of the state, thereby entitling it to Eleventh Amendment Immunity.

1.      Characterization of the Florida Commission under State Law

Florida law clearly characterizes the Florida Commission as a state agency. Florida law defines an agency as, *inter alia,* a commission. *See* Fla. Stat. § 20.03(11) (" 'Agency,' as the context requires, means a[ ] ... commission ...."); *see also* Fla. Stat. § 120.51(1) (" 'Agency' means: ... 4. Commission...."). Florida law, in turn, defines a "commission" as "a body created by specific statutory enactment within a department ... and exercising limited quasi-legislative or quasi-judicial powers, or both, independently of the head of the department or the Governor." Fla. Stat. § 20.03(10). The Florida Commission falls squarely within this definition. The Florida legislature created the Commission under the Department of Professional Regulation ("DPR").[5] *See* Fla. Stat. § 548.003. The Commission also has limited quasi-legislative and quasi-judicial powers independent of the head of the DPR and the Governor.[6] Moreover, as with other state agencies,

---

[5]The DPR is a department within the executive branch of Florida empowered to license and regulate the practice of various professions within the state. *See* Fla. Stat. § 455.201.

[6]The Tribe provides a long list of powers Florida has delegated to the Florida Commission in order to show that the state views the Commission as an independent entity and not a state agency. For example, the Florida Commission has the power to enact rules to regulate pugilistic exhibitions, *see* Fla. Stat. § 548.003(2), and has the power to hold hearings to determine whether to suspend or revoke a license, notwithstanding Florida's APA, *see* Fla. Stat. § 548.07.

The Tribe correctly notes that the Florida Commission has independent legislative and judicial powers. These powers, however, are limited. The state created the Commission for the sole purpose of exercising state regulatory authority over boxing matches. *See* Fla. Stat. §

Florida's Administrative Procedure Act ("APA") applies to the Florida Commission's rule making powers.[7]

Therefore, Florida law characterizes the Florida Commission as a state agency.

2.      Degree of State Control over the Florida Commission

The Tribe argues that the state exercises little control over the Florida Commission because the Commission may promulgate regulations and may conduct adjudications to suspend or revoke a license or permit. As previously noted, the APA applies to the Commission's rule making functions. Thus, the state has provided guidelines to limit the Commission's ability to make regulations and, consequently, has some control over the Commission's rule making powers. Although the APA does not apply to suspension or revocation adjudications, the state has not given the Commission unfettered discretion in this area. Instead, the state allows the Commission to suspend or revoke a license for a limited number of grounds. *See* Fla. Stat. § 548.071. Also, the state requires a majority of the Commission to examine the record and approve the adjudication and order. *See* Fla. Stat. § 548.073. Therefore, this single exception to the APA does not grant the Commission sufficient independent authority to make it fall outside of state control.

Moreover, other factors support the conclusion that the state controls the Florida Commission. The Governor and the State Senate select the Commission's members. *See* Fla. Stat. § 548.003(1) ("The State Athletic Commission shall consist of five members appointed by the Governor, subject to confirmation by the Senate.").[8] State authority over the appointment of agency members lends support to finding that the

---

548.003. In doing so, the state has carefully set forth the limits and extent of the Commission's power.

[7]The Florida Commission falls within the state's definition of an agency, *see* Fla. Stat. § 120.51, and thus, its rule making authority is subject to Florida's APA, *see* Fla. Stat. §§ 120.536 and 120.54. In addition, in 1999, the Florida legislature amended § 548.003(2) to state explicitly that "[t]he commission has authority to adopt rules pursuant to § 120.536(1) and 120.54 [of the Administrative Procedure Act]...."

[8]Once appointed, the members of the Commission serve a term of four years. In 1999, the Florida legislature amended § 548.003 to state that each commission member shall be accountable to the Governor, who may remove them from office.

agency is an arm of the state for Eleventh Amendment purposes.[9]  *See Christy v. Pennsylvania Turnpike Comm'n,* 54 F.3d 1140, 1149 (3d Cir.1995);  *Fouche v. Jekyll Island-State Park Auth.,* 713 F.2d 1518, 1520 (11th Cir.1983).  Also, the DPR has some control over the Florida Commission.  For example, if the Commission fails to remedy potential revenue shortcomings identified by the DPR, the DPR may set license fees on behalf of the Commission to assure an adequate cash balance.  *See* Fla. Stat. § 455.219(1);  *see also* Fla. Stat. § 455.204 (requiring the DPR to develop a long-range plan for each board and monitor each board for compliance).[10]

3.      Funding

The Tribe also contends that the Florida Commission is fiscally independent because it does not rely upon state funds to support its operations.  Instead, the Commission raises its own funds to pay its expenses.  *See* Fla. Stat. § 548.077. Even though the Commission may collect money to pay for its own expenses, the Commission is still an arm of the state because the state controls its fiscal life.  In *Fouche,* this court held that although the Park Authority raised its own money and was self-sufficient, the state controlled the Park's fiscal life because the Park had to submit its budget and annual reports to the legislature.  *See* 713 F.2d at 1520-21; *see also Harden v. Adams,* 760 F.2d 1158, 1163 (11th Cir.1985) ("Where the budget of an entity is submitted to the state for approval, this suggests that the entity is an agency of the state.").  Similarly, the Florida legislature controls the Florida Commission's fiscal life.  The Florida legislature appropriates the funds to

_____

[9]Even though the Governor appoints the commissioners, the Tribe, relying on *Miccosukee Tribe of Indians v. United States,* No. 97-5488, 163 F.3d 1359 (11th Cir.1998) (unpublished), argues that the Commission's ability to levy fines requires this court to remand the case.  In *Miccosukee Tribe,* this court stated that it would not rest its affirmance on Eleventh Amendment grounds because the facts only showed that the South Water Management District could levy *ad valorem* taxes on property, like political subdivisions, and that the governor appointed the members to the district, like state agencies.  *See id.* at 4. Fines, however, differ in kind from *ad valorem* taxes.  Agencies typically levy fines on those who violate laws within the area an agency regulates, while agencies typically do not impose *ad valorem* taxes. Additionally, we have more information indicating that the Commission is an arm of the state in this case than in *Miccosukee Tribe.*

[10]In 1999, Florida added Fla. Stat. § 548.005 which altered DPR's oversight of the Commission.  In particular, section 548.005 provides that the DPR shall oversee the Commission's activities and assist the Commission in creating a long-range plan to be submitted to the Governor for approval.  *See* Fla. Stat. § 548.005(1) & (2).  Section 548.005(2) also requires the DPR to monitor the Commission's compliance with the long-range plan and report its findings to the Governor.

carry out the Commission's functions. *See* Fla. Stat. § 455.219(4). Additionally, the DPR submits to the legislature an annual report on the Commission which includes a breakdown of the Commission's revenue and expenses and a condensed version of the Commission's long-range plan. *See id.*

Furthermore, section 548.077 reinforces the notion that the Commission is an arm of the state. This statute requires the Commission to send all moneys collected to the State Treasurer. The State Treasurer, and not the Commission, pays the Commission's expenses. Also, if the Commission's trust fund exceeds $250,000, the excess money goes to the state's general revenue fund. Thus, this factor also supports the proposition that the Commission is an arm of the state.

4.      Responsibility for Judgments

The Tribe contends that the Florida Commission, rather than the state, is responsible for any judgments rendered against it. Section 548.077 requires the State Treasurer to pay the Commission's expenses from the moneys collected by the Commission. According to the Tribe, the expenses covered in § 548.077 necessarily include litigation expenses and monetary judgments. However, responsibility for any judgment rendered against the Commission in this case may be assumed by the state through the Florida Risk Management Trust Fund. *See* Fla. Stat. § 284.30; *see also Tuveson,* 734 F.2d at 734 ("Responsibility for any judgment in this case against the Council will be assumed by the state through the Florida Risk Management Trust Fund."). This state self-insurance fund provides, *inter alia,* insurance to cover the state or its agencies from liability in a 42 U.S.C. § 1983 action and from court-awarded attorney's fees in other proceedings against the state. *See* Fla. Stat. § 284.30; *see also Gamble v. Florida Dep't of Health & Rehabilitative Serv.,* 779 F.2d 1509, 1516 (11th Cir.1986).

As to the Tribe's claims that may fall outside of § 284.30, Florida law provides that neither the state nor its state agencies shall pay any monetary damages under the judgment of any court except pursuant to an appropriation made by law. *See* Fla. Stat. § 11.066. Moreover, because the Florida Commission submits its budget to the Florida legislature for approval, the state would be responsible for the Commission's debts,

such as court judgments.[11]  *See Fouche,* 713 F.2d at 1521 (holding that the state would presumably be responsible for any debts incurred because the Park Authority submits its budget to the Georgia legislature.). Therefore, Florida would be responsible for any judgments rendered against the Florida Commission.

Since all four factors support the conclusion that the Florida Commission is an arm of the state, the Florida Commission is entitled to Eleventh Amendment immunity from suit.[12]  *See Schopler v. Bliss,* 903 F.2d 1373, 1378-79 (11th Cir.1990) (holding that the DPR and a board within the DPR were entitled to Eleventh Amendment Immunity).

### III. Conclusion

We agree with the district court that the Tribe lacks standing to bring an Equal Protection claim because the Tribe fails to allege an injury in fact.  We, however, hold that the Tribe does allege an injury in fact as to the tax claim.  A state's attempt to levy a tax on a non-Indian who works on an Indian reservation infringes upon the Indian tribe's interest in self-government and this infringement satisfies the injury in fact requirement.  Lastly, we affirm the district court's finding that the Florida Commission is an arm of the state, thereby entitling it to Eleventh Amendment Immunity.

AFFIRMED in part, REVERSED, in part, and REMANDED.

---

[11]Furthermore, if the Commission has a negative cash balance, Fla. Stat. § 455.219(1) provides that the DPR, a state agency, may advance sufficient funds to the Commission to ensure an adequate cash balance.

[12]Defendants do not appeal the district court's holding that the individual defendants were not entitled to Eleventh Amendment Immunity.